UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------

| | | |
|---|---|---|
| MINISTER LOUIS FARRAKHAN and THE NATION OF ISLAM, | x : : : | 1:23-CV-09110-DLC |
| Plaintiffs, | : : : | |
| - against - | : : : | |
| ANTI-DEFAMATION LEAGUE, JONATHAN GREENBLATT, individually, and in his official capacity as CEO and National Director of the ANTI-DEFAMATION LEAGUE, SIMON WIESENTHAL CENTER, and RABBI ABRAHAM COOPER, individually and in his official capacity as Director of Global Social Action Agenda for the SIMON WIESENTHAL CENTER, | : : : : : : : : : | |
| Defendants. | : : x | |

------------------------------------------------------------------

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' ANTI-DEFAMATION LEAGUE'S
AND JONATHAN GREENBLATT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND.......................................................................................2

    A.    The Parties ............................................................................................ 2

    B.    Farrakhan in his Own Words ................................................................ 3

    C.    The Amended Complaint ...................................................................... 5

            1.    Alleged Constitutional Torts (Counts 1-5)................................... 5

            a.    Alleged Conduct Under Color of Federal Law (Counts 1-3, 11)............... 5

            b.    Alleged Conduct Under Color of State Law (Counts 4-5) ........................ 7

            2.    The Defamation Claims (Counts 6-7)........................................ 7

ARGUMENT ...............................................................................................................8

I.    PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS FOR DEPRIVATIONS OF CONSTITUTIONAL RIGHTS (COUNTS 1-5) ............................ 8

    A.    Counts 2, 4 and 5 Allege No Injury-In-Fact ......................................... 9

    B.    Counts 1-5 Plead No Plausible Nexus Between Plaintiffs' Alleged Injuries and ADL's Alleged Actions...............................................................11

    C.    NOI Lacks Prudential Standing To Assert Claims For Its Members ................... 12

II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR CONSTITUTIONAL VIOLATIONS (COUNTS 1-5)....................................................................... 12

    A.    Plaintiffs Fail To State any *Bivens* Claims (Counts 1-3) ...................... 13

    B.    Plaintiffs Fail to State a Section 1983 Claim (Counts 4-5)................................. 14

III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY JUDGMENT(COUNT 11)....................................................................... 17

IV.    PLAINTIFFS FAIL TO PLEAD A CLAIM FOR DEFAMATION (COUNTS 6-7)........ 18

    A.    The Challenged Statements are Nonactionable Opinion ...................... 19

B.   Plaintiffs Cannot Plausibly Plead That The Challenged Statements Are Materially False ....................................................................................... 21

C.   The Amended Complaint Fails To Plausibly Plead Actual Malice ...................... 23

    1.   Plaintiffs Must Plausibly Plead Facts that Could Establish Actual Malice ........................................................................................ 23

    2.   Plaintiffs Fail to Plausibly Plead Actual Malice ...................................... 24

CONCLUSION..................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
  821 F.3d 352 (2d Cir. 2016)........................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................13, 14, 25

*Atamian v. Gentile*,
  337 F. App'x 182 (3d Cir. 2009) ..............................................................................22

*Bailey v. New York Law Sch.*,
  No. 19-3473, 2021 WL 5500078 (2d Cir. Nov. 24, 2021) ................................15, 18

*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004)........................................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................25

*Bennett v. Spear*,
  520 U.S. 154 (1997)................................................................................................9, 11

*Biro v. Condé Nast*,
  807 F. 3d 541 (2d Cir. 2015)......................................................................................23

*Biro v. Condè Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012).......................................................................22

*Bivens v. Six Unknown Fed. Narcotics Agents*,
  403 U.S. 388 (1971)..................................................................................2, 13, 14, 18

*Black Lives Matter v. Town of Clarkstown*,
  354 F. Supp. 3d 313 (S.D.N.Y. 2018).......................................................................12

*Brahms v. Carver*,
  33 F. Supp. 3d 192 (E.D.N.Y. 2014) .........................................................................21

*Brimelow v. N.Y. Times Co.*,
  No. 21-66-cv, 2021 WL 4901969 (2d Cir. Oct. 21, 2021), *cert. denied*, 142 S. Ct. 1210
  (2022)
  ....................................................................................................................................23

*Castro v. Cnty. of Nassau*,
   739 F. Supp. 2d 153 (E.D.N.Y.2010) ...................................................................18

*Celle v. Filipino Reporter Enters., Inc.*,
   209 F.3d 163 (2d Cir. 2000)...............................................................................20

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002).................................................................................4

*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014)................................................................................20

*Chung v. Better Health Plan*,
   No. 96 CIV. 7310(JGK), 1997 WL 379706 (S.D.N.Y. July 9, 1997) ....................22

*Church of Scientology Int'l v. Behar*,
   238 F.3d 168 (2d Cir. 2001)................................................................................24

*Colombo v. O'Connell*,
   310 F. 3d 115 (2d Cir. 2002)...............................................................................11

*Cooper v. Franklin Templeton Invs.*,
   No. 22-2763-cv, 2023 WL 3882977 (2d Cir. June 8, 2023).................................20

*Cooper v. Templeton*,
   629 F. Supp. 3d 223 (S.D.N.Y. 2022)..................................................................19

*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001)..............................................................................13, 14, 18

*Cummings v. City of N.Y.*,
   No. 21-1380, 2022 WL 2166585 (2d Cir. June 16, 2022) ....................................20

*Davis v. Garcia*,
   No. 07 Civ. 9897(CLB), 2008 WL 2229811 (S.D.N.Y. May 27, 2008) ................11

*Dow Jones & Co. v. Harrods Ltd.*,
   346 F. 3d 357 (2d Cir. 2003)...............................................................................17

*Egiazaryan v. Zalamayev*,
   880 F. Supp. 2d 494 (S.D.N.Y. 2012)..................................................................19

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)............................................................................................24

*Gilliard v. N.Y. Pub. Library Sys.*,
   597 F. Supp. 1069 (S.D.N.Y. 1984).....................................................................18

*Goldschmidt v. New York State Affordable Housing Corp.*,
  380 F. Supp. 2d 303 (S.D.N.Y. 2005)......................................................................3

*Green v. Jackson*,
  36 F. App'x 663 (2d Cir. 2002) ...........................................................................10

*Greenbelt Coop. Publ'g Ass'n v. Bresler*,
  398 U.S. 6 (1970)................................................................................................24

*Guccione v. Hustler Mag., Inc.*,
  800 F.2d 298 (2d Cir. 1986)...............................................................................22

*Hammerhead Enters., Inc. v. Brezenoff*,
  707 F.2d 33 (2d Cir. 1983)..................................................................................16

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989)............................................................................................25

*Higazy v. Templeton*,
  505 F.3d 161 (2d Cir. 2007)................................................................................13

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995).....................................................................................3

*Jewell v. NYP Holdings, Inc.*,
  23 F. Supp. 2d 348 (S.D.N.Y. 1998)...................................................................22

*Larry Carter Ctr. v. Catholic Charities*,
  No. 5:15-CV-0597, 2015 WL 4067559 (N.D.N.Y. July 2, 2015) ..........................14

*Lerman v. Flynt Distrib. Co.*,
  745 F.2d 123 (2d Cir. 1984)................................................................................24

*Levin v. Am. Document Servs., LLC*,
  828 F. App'x 788 (2d Cir. 2020) ........................................................................17

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
  638 F. Supp. 1149 (D.D.C. 1986), *aff'd*, 838 F.2d 1287 (D.C. Cir. 1988)...........................22

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
  838 F.2d 1287 (D.C. Cir. 1988) ............................................................................3

*Lurch v. City of New York*,
  No. 19-cv-11253 (AJN), 2021 WL 1226927 (S.D.N.Y. Mar. 31, 2021).........................14, 16

*Masson v. New Yorker Mag., Inc.*,
  501 U.S. 496 (1991).............................................................................................22

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005)................................................................12

*Miller v. Vohne Liche Kennels, Inc.*,
    600 F. App'x. 475 (7th Cir. 2015).......................................................15

*Mirage Ent., Inc. v. FEG Entretenimientos S.A.*,
    326 F. Supp. 3d 26 (S.D.N.Y. 2018)...................................................21

*Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*,
    759 F.2d 219 (2d Cir. 1985)................................................................20

*Nat'l Ass'n of Gov't Emps./Int'l Bhd. of Police Officers v. Buci Television, Inc.*,
    118 F. Supp. 2d 126 (D. Mass. 2000) .................................................20

*New Alliance Party v. FBI*,
    858 F. Supp. 425 (S.D.N.Y. 1994) .....................................................11

*Nitke v. Ashcroft*,
    253 F. Supp. 2d 587 (S.D.N.Y. 2003).............................................10, 11

*Notey v. Hynes*,
    418 F. Supp. 1320 (E.D.N.Y. 1976) ...................................................10

*Oakley v. Dolan*,
    833 F. App'x 896 (2d Cir. 2020) .........................................................23

*Oakley v. Dolan*,
    No. 17-cv-6903 (RJS), 2020 WL 818920 (S.D.N.Y. Feb. 19, 2020), *rev'd in part on other grounds*, 980 F.3d 279 (2d Cir. 2020) .................................................25

*Ratajack v. Brewster Fire Dep't, Inc.*,
    178 F. Supp. 3d 118 (S.D.N.Y. 2016)..................................................19

*Reichle v. Howards*,
    566 U.S. 658 (2012)............................................................................14

*Rolle v. Girardi*,
    689 F. App'x 64 (2d Cir. 2017) .............................................................9

*Ruiz v. Fed. Police Dep't*,
    No. 23-CV-7421 (LTS), 2023 WL 6610762 (S.D.N.Y. Oct. 10, 2023) .................................14

*Selvam v. United States*,
    No. 21-2513-cv, 2022 WL 6589550 (2d Cir. Oct. 11, 2022), *cert. denied*, No. 22-1121, 2023 WL 6377873 (Oct. 2, 2023)................................13

*Shapiro v. Holdman*,
14 Civ. 10119 (NRB), 2016 WL 4371741 (S.D.N.Y. Aug. 15, 2016), *aff'd*, 696 F. App'x 532
(2d Cir. 2017) ................................................................................................................. 13

*Singleton v. Doe*,
No. 14-CV-0303 (MKB), 2014 WL 3110033 (E.D.N.Y. July 7, 2014) .......................... 16, 18

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................................................ 9

*St. Amant v. Thompson*,
390 U.S. 727 (1968) ........................................................................................................ 25

*Standing Comm. on Discipline v. Yagman*,
55 F.3d 1430 (9th Cir. 1995) ........................................................................................... 20

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ........................................................................................................ 9

*Sybalski v. Indep. Grp. Home Living Program, Inc.*,
546 F.3d 255 (2d Cir. 2008) ............................................................................................ 15

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017) ............................................................................................ 22

*Tanvir v. Lynch*,
128 F. Supp. 3d 756 (S.D.N.Y. 2015), *rev'd on other grounds sub nom.*, 894 F.3d 449 (2d
Cir. 2018) ........................................................................................................................ 14

*Torain v. Liu*,
279 F. App'x 46 (2d Cir. 2008) ....................................................................................... 20

*Turkmen v. Hasty*,
789 F.3d 218 (2d Cir. 2015) ............................................................................................ 14

*Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*,
890 F. Supp. 2d 398 (S.D.N.Y. 2012) .............................................................................. 18

*Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*,
784 F. Supp. 2d 391 (S.D.N.Y. 2011) .............................................................................. 17

*Wade v. Byles*,
83 F.3d 902 (7th Cir.1996) .............................................................................................. 15

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ........................................................................................................ 10

*X-Men Security, Inc. v. Pataki*,
    196 F.3d 56 (2d Cir. 1999) ...........................................................................................16

**State Cases**

*Aristocrat Plastic Surgery P.C. v. Silva*,
    206 A.D.3d 26 (1st Dep't 2022) ...................................................................................23

*Comic Strip Promotions, Inc. v. Envivo LLC*,
    76 Misc. 3d 1229(A), (Sup. Ct. N.Y. Cnty. 2022) ......................................................19

*Farrakhan v. N.Y.P Holdings, Inc.*,
    168 Misc. 2d 536 (Sup. Ct. N.Y. Cnty. 1995), *aff'd*, 238 A.D.2d 197 (1st Dep't 1997).........24

*Gross v. N.Y. Times Co.*,
    82 N.Y.2d 146 (1993) ..................................................................................................20

*Russell v. Davies*,
    97 A.D.3d 649 (2d Dep't 2012) ...................................................................................19

*Sandals Resorts Int'l, Ltd. v. Google, Inc.*,
    27 Misc. 3d 1207(A), (Sup. Ct. N.Y. Cnty. 2018), *aff'd*, 86 A.D.3d 32 (1st Dep't 2011) ......21

*Silverman v. Daily News, L.P.*,
    129 A.D.3d 1054 (2d Dep't 2015) ...............................................................................20

*Steinhilber v. Alphonse*,
    68 N.Y.2d 283 (1986) ..................................................................................................21

**Federal Statutes**

42 U.S.C. § 1983 ................................................................................................................ *passim*

**State Statutes**

N.Y. Civil Rights Law
    § 76-a ...........................................................................................................................23

**Rules**

Fed. R. Civ. P.
    12(b)(1) ...........................................................................................................................1
    12(b)(6) .................................................................................................................. *passim*

**Constitutional Provisions**

United States Constitution
    First Amendment ..................................................................................................... *passim*

Defendants Anti-Defamation League ("ADL") and Jonathan Greenblatt ("Greenblatt") (collectively, "ADL") respectfully submit this memorandum of law in support of their motion pursuant to Rules 12(b)(1) and (6), to dismiss the Amended Complaint ("AC") filed by Plaintiffs Minister Louis Farrakhan ("Farrakhan") and Nation of Islam ("NOI").

## PRELIMINARY STATEMENT

Ostensibly to prove that he is not an antisemite, Farrakhan and NOI seek to become billionaires by bankrupting the world's leading organizations fighting antisemitism and commemorating the Holocaust. Their fundamental claim against ADL is that Jews are so powerful that this Court should declare ADL to be the government. The irony behind this lawsuit is rich. Its legal merit is not.

Plaintiffs bring essentially two sets of claims against ADL. First, they argue that by engaging with public officials and advocating for public policies to combat antisemitism, ADL became a "quasi-governmental" entity infringing *Plaintiffs'* First Amendment rights. Second, Plaintiffs allege that ADL defamed them by labeling Farrakhan "virulently" and "notoriously antisemitic," and by reporting that Farrakhan referred to Jews as "termites" (together, the "Challenged Statements"). Plaintiffs' theories fail as a matter of law, for at least a half-dozen reasons.

Their constitutional tort claims stand the First Amendment on its head. It is ADL that has a constitutional right to engage in political advocacy, and Plaintiffs have no right to try to use the courts to punish such advocacy. Their constitutional claims thus fail for several reasons.

First, Plaintiffs lack standing to assert them. For the most part, Plaintiffs fail to allege a single injury-in-fact they supposedly suffered, and they plead none that are plausibly connected to ADL. In addition, NOI pleads no basis for maintaining claims on behalf of its members. Accordingly, the Court lacks subject matter jurisdiction over the constitutional claims.

But even if Plaintiffs did have standing, it would make no difference.  Plaintiffs' claims that ADL supposedly acted under color of *federal* law are frivolous.  Such *Bivens* claims may only be asserted against individual government employees, and in any event do not encompass alleged violations of the First Amendment.

The same is true for the alleged acts supposedly performed under color of *state* law.  The Amended Complaint does not plausibly allege any conduct that could transform a non-profit advocacy organization into a state actor.  Beyond encouraging the government to combat antisemitism, Plaintiffs merely allege (falsely) that ADL received public funding as part of a federal program to combat antisemitism, and provided training and/or information to law enforcement.  None of this pleads a "close nexus" to state action, nor does it transform ADL into a "quasi-governmental" entity.  For much the same reasons, since Plaintiffs fail to plead any "case or controversy," their request for a judicial declaration that ADL is a "quasi-governmental" federal agency should be dismissed as non-justiciable, and in any event fails to plausibly allege any basis for declaring ADL to be the government.

Finally, the defamation claims are also patently frivolous.  That Farrakhan is an antisemite is not provably false, and even if that were not so it could not plausibly be anything other than substantially true.  Plaintiffs also fail to plausibly plead actual malice.

For all these reasons, the Amended Complaint should be dismissed.

## FACTUAL BACKGROUND

### A.    The Parties

Founded in 1913, Defendant ADL is a not-for-profit corporation (AC ¶ 16) that works to combat antisemitism and all forms of bias.  Defendant Greenblatt is ADL's National Director and CEO.  *Id.* ¶ 17.  ADL is routinely cited by federal courts as an authority on antisemitism and hate

crimes.[1]  NOI is a Chicago-based not-for-profit corporation dedicated to the "Teachings of the Most Honorable Elijah Muhammad." *Id.* ¶ 15.  Farrakhan is NOI's leader.  *Id.*

### B.    Farrakhan in his Own Words

This is one of those cases where a plaintiff's own words, as set forth in his own exhibits, speak for themselves.  Some examples of Farrakhan's statements from the exhibits to the Amended Complaint, none of which he denies saying, include:

- "The Jews cannot defeat me.  I will grind them and crush them into little bits."  (Farrakhan Speech in Flushing, New York, May 21, 1988.  AC Ex. M, Dkt. 33-17 at 41.)

- "Jews want everyone to bow down to them, and I ain't bowing down to nothing or nobody but G-d."  (Interview, *Baltimore Jewish Times*, August 7, 1993.  *Id.* Ex. P, Dkt. 33-20 at 7.)

- "We know that the Jews are the most organized, rich and powerful people, not only in America, but in the world.  They're plotting against us even as we speak."  (Farrakhan Speech at the 369th Regiment Armory in New York, January 24, 1994.  *Id.* at 6.)

- "Those who call themselves 'Jews,' who are not really Jews, but are in fact Satan: You should learn to call them by their real name, 'Satan;' you are coming face-to-face with Satan []."  (Farrakhan Saviours' Day speech, February 26, 2017.  (Original Complaint Ex. Z, Dkt. 11-6 at 73.[2])

- "When you want something in this world, the Jew holds the door."  (Farrakhan Saviours' Day speech, February 25, 2018.  *Id.* at 72.)

- "The Jews were responsible for all of this filth and degenerate behavior that Hollywood is putting out: turning men into women, and women into men."  *Id.* at 73.

---

[1] *See, e.g., Goldschmidt v. New York State Affordable Housing Corp.*, 380 F. Supp. 2d 303, 316 n.12 (S.D.N.Y. 2005) (citing ADL 2002 survey for definition of antisemitism); *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1296 (D.C. Cir. 1988) (finding that ADL publications about antisemitism were "reputable sources").

[2] Citation is made to the version of Exhibit Z attached to Plaintiffs' original complaint, because Plaintiffs chose to file only a one-page excerpt from this exhibit as part of their Amended Complaint.  *See* Dkt. 33-31.  "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment."  *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

- "Do you know that the enemies of Jesus were the Jews of his day and the Roman authorities?  That wasn't 2000 years ago alone.  That's today!" (Saviours' Day speech (part 2), Mosque Maryam, Chicago, Illinois, March 2, 2014.  *Id.* at 73.)

- Farrakhan:   "Is the Federal Reserve owned by the government?"
  Audience:    "No."
  Farrakhan:   "Who owns the Federal Reserve?"
  Audience:    "Jews." (Saviours' Day speech, Chicago, Illinois, February 23, 2003.  *Id.* at 78-79.).

Also at issue in this case, Farrakhan delivered a speech on October 14, 2018, in which he said, "So when they talk about Farrakhan, call me a hater, you know what they do, call me an antisemite; stop it. I'm anti-termite."  Declaration of Nathan Siegel ("Siegel Decl.") Ex. 1 at 2:00:08-32 (video recording).[3]  Farrakhan also promoted his comment on Twitter:



Even within this lawsuit, Plaintiffs seek to have a jury endorse age-old antisemitic tropes, such as by alleging that ADL "does not like the truth that [Farrakhan] speaks, and such behavior is reminiscent of 2,000 years ago when certain Jews of that day could not bear to hear the truth that Jesus spoke about them."  *Id.* ¶ 260.

---

[3] *See also* Siegel Decl. Ex. 1 at 4 (transcript).  The video and transcript, as well as Farrakhan's tweet (Siegel Decl. Ex. 3) are incorporated by reference into the Amended Complaint because Plaintiffs' claims arise from these remarks.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include . . . any statements or documents incorporated in it by reference.") (citation omitted).  *See also supra* n. 2.

### C.    The Amended Complaint

The majority of the Amended Complaint recites alleged historical grievances that have little relevance to Plaintiffs' present claims.  Their actual claims include the following:

### 1.    Alleged Constitutional Torts (Counts 1-5)

Counts 1-5 are pled only against Defendant ADL and allege that it violated Plaintiffs' First Amendment rights regarding speech, association, and the free exercise of religion.  They are divided into alleged conduct under color of federal law and acts under color of state law.

### a.    Alleged Conduct Under Color of Federal Law (Counts 1-3, 11)

Counts 1-3 are premised on the allegation that ADL is "a quasi-governmental entity of the U.S. government."  AC ¶¶ 221-79, 457.  The allegations supporting this theory include that:  FBI directors have spoken of "close relations" between the FBI and ADL, *id.* ¶ 423; there is an alleged "free sharing of information" between ADL and the FBI, *id.* ¶ 429; Greenblatt invited an advisor from DHS to speak at a White House conference about antisemitism, *id.* ¶¶ 431-32; ADL "was instrumental in facilitating 'The U.S. National Strategy on Countering Antisemitism,'" *id.* ¶ 436; ADL supposedly sent a "demand letter brazenly command[ing]" the Office of Management and Budget to support funding for anti-hate initiatives in the congressional appropriations process, *id.* ¶¶ 445-47 (citing Exs. DD, DD-1); and ADL helped shape the Biden Administration's "National Strategy To Counter Antisemitism," *id.* ¶¶ 252-57.

With respect to Plaintiffs' alleged injuries, Count 1 alleges that Morgan State University denied NOI's application to use its Fine Arts Center to hold an event.  *Id.* ¶ 232.  In its email denying NOI's request, a Morgan State official stated only that "[t]he type of event that you are asking to hold is not suited for our center."  *Id.* ¶ 233 (citing Ex. XX, Dkt. 33-63).  Plaintiffs allege "[u]pon information and belief" that Morgan State denied NOI's request at the behest of ADL, which used its "power and authority derived from its close association with the federal

government." *Id.* ¶ 237.  The Amended Complaint makes plain that Plaintiffs' purported "belief" is entirely speculative; the only "information" pled to supposedly "support" this "belief" is the bare fact that NOI's application was granted in 2014 and denied in 2023.  *Id.* ¶¶ 230-34.

Count 2 alleges that by contributing to the "National Strategy To Counter Antisemitism," ADL made Farrakhan a "real and imminent target" of "arrest, prosecution, and likely imprisonment." *Id.* ¶¶ 262-63.  Count 2 further alleges that Defendant Greenblatt wrote a letter to Ticketmaster about its selling tickets to NOI's 2023 Saviours' Day event in Chicago.  *Id.* ¶¶ 264-66; Ex. EEE (Dkt. 33-71) (the "Ticketmaster Letter").  The letter specifically states that ADL was not asking Ticketmaster to take "any particular action," nor do Plaintiffs allege that Ticketmaster took any action.  Dkt. 33-71 at 2.  Plaintiffs also complain that Greenblatt, in a tweet, called on the City of Chicago and the owners of the venue where the event was held to "condemn his [Farrakhan's] hateful words."  *Id.* ¶ 267; Ex. FFF (Dkt. 33-72).

Count 3 alleges that in July 2020, Vimeo, an online video streaming service, cancelled NOI's user account, citing repeated violations of Vimeo's Terms of Service and Community Guidelines. *Id.* ¶¶ 277-78.  Specifically, Vimeo stated in its cancellation notice that NOI violated its policies by sharing videos that are "hateful, harass others, or include defamatory or discriminatory speech."  *Id.* Ex. GGG (Dkt. 33-73) at 3.  The notice included a hyperlink to an ADL article titled, "Farrakhan Remains Most Popular Antisemite in America." *Id.* at 4.  Plaintiffs allege without any factual support that ADL "used its authority and sanctioning by the F.B.I. to cause 'Vimeo' to cancel" its account.  *Id.* ¶ 277.

Finally, based on the same allegations that underlie their constitutional tort claims, in Count 11, they also seek a declaratory judgment that ADL is a "quasi-governmental entity of the U.S. government."  *Id.* ¶¶ 414-57.

### b.      Alleged Conduct Under Color of State Law (Counts 4-5)

Counts 4 and 5 allege that ADL acted under color of state law to interfere with Plaintiffs'
free exercise of religion and association rights.  *Id.* ¶¶ 280-344.  The claim that ADL is a state
actor is premised upon assertions that (1) Governor Hochul announced state efforts to combat
antisemitism, including by adopting recommendations in the National Strategy to Counter
Antisemitism (*id.* ¶¶ 290-96); (2) in the past ADL has made presentations to the New York State
Police, and may do so again (*id.* ¶¶ 302-06); and (3) in a press conference, Mayor Adams said in
passing that the City was "partnering" with multiple organizations, including ADL, as well as
various rabbis, to discuss "How do we create environments where hate cannot grow in our cities?"
*Id.* ¶ 315; Ex. HHH (Dkt. 33-74) at 3.  On that basis, the Amended Complaint speculates that ADL
will, at some point in the near future, be deputized to be in charge of all state and local
investigations of hate crimes.  *Id.* ¶¶ 298-99, 312.  Plaintiffs speculate that this will pose "a real
and imminent threat" to their First Amendment rights.  *Id.* ¶¶ 308-09, 312, 314, 319-20, 334, 342-
43.

### 2.      The Defamation Claims (Counts 6-7)

The actual allegedly defamatory statements at issue first appear towards the end of the
Amended Complaint's 87 pages.

The first Challenged Statement, in Count 6, was made in an ADL blog post titled,
"Extremists Are Praising Kanye West's Antisemitism, Parler Acquisition" (the "Blog Post"),
AC ¶ 348.  The Blog Post refers to NOI as "virulently antisemitic," linking to a lengthy ADL
profile of the Nation of Islam (*see* Seigel Decl. Ex. 4) that, among other things, contains numerous
direct quotes from Farrakhan and other NOI speakers and publications.  The Blog Post also quotes
multiple prior statements by senior NOI officials, including that there is a "Jewish gay mafia that
controls hip-hop and has used hip-hop to socially engineer Black America," that Jews are "a very

dangerous enemy," and that "Hip Hop is being used by real Devils to get us to offer ourselves and our children up to a very real Blood Sacrifice" by "demonic High Priests" who are "all Jewish" and "have ingested all of the blood that we have sacrificed on their alter."  Dkt. 11-14 (original Complaint Ex. III) at 103.[4]

The other two Challenged Statements, in Count 7, are contained in the Ticketmaster Letter. AC ¶ 264.  Greenblatt describes Farrakhan as "one of the most notorious antisemites in the country."  *Id.* Ex. EEE (Dkt. 33-71) at 2.  Greenblatt then proceeds to list specific past statements, including that Farrakhan referred to Jews as "termites," "denied the magnitude of the Holocaust" and "blamed Jews for its occurrence," that "pedophilia and sexual perversion . . . can be traced to Talmudic principles and Jewish influence," and that "many Israelis and Zionist Jews [had] key roles in the 9/11 attacks."  *Id.* at 2-3.  The Amended Complaint disputes that the "termites" statement was intended to refer to Jews, but does not dispute any of the others attributed to Farrakhan.  The letter closes with the sentence, "You can learn more about Louis Farrakhan and the Nation of Islam on our website."  *Id.* at 3.  That sentence hyperlinks to articles on ADL's website that enumerate dozens of disparaging statements made by Plaintiffs about Jews, including video of Farrakhan speeches, and the full sentence from the speech in which he asked the crowd to not "call me an anti-Semite.  Stop it, I'm anti-termite."[5]

## ARGUMENT

## I.     PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS FOR DEPRIVATIONS OF CONSTITUTIONAL RIGHTS (COUNTS 1-5)

As a threshold matter, Counts 1-5 fail as a matter of law, because Plaintiffs fail to plead

---

[4] Plaintiffs' Amended Complaint includes only a one-page excerpt from this document, so reference is made to the complete version that was attached to Plaintiffs' original Complaint.  *See supra* n.2.

[5] Plaintiffs did not attach a complete version of either hyperlinked document to their Amended Complaint.  A complete version of the first document was attached as Exhibit Z to the original Complaint. Dkt. 11-6 at 71-91.  The second hyperlinked document is attached as Exhibit 4 to the Siegel Declaration.

even the most basic elements of standing.  To withstand dismissal for lack of subject matter jurisdiction, a plaintiff must establish both constitutional standing and prudential standing.  *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016).  *See also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (plaintiff bears the burden of establishing standing).

The elements of constitutional standing derive from the "Cases" or "Controversies" requirements of Article III.  *Spokeo*, 578 U.S. at 337-38.  Those elements are:

> (1) that the plaintiff[s] have suffered an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is "a causal connection between the injury and the conduct" of which the plaintiff complains; and (3) that it is "likely ... that the injury will be redressed by a favorable decision."

*Amer. Psychiatric Ass'n*, 821 F. 3d at 358 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Courts also apply "prudential principles that bear on the question of standing," which are "judicially self-imposed limits on the exercise of federal jurisdiction."  *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citations omitted).  "Under the prudential standing rule, a plaintiff 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"  *Rolle v. Girardi*, 689 F. App'x 64, 65 (2d Cir. 2017) (quoting *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014)).

### A.    Counts 2, 4 and 5 Allege No Injury-In-Fact

"[T]he requirement of injury in fact is a hard floor of Article III jurisdiction []."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Spokeo*, 578 U.S. at 340.  "In the First Amendment context," when a plaintiff alleges a "chilling effect," "the Court must ascertain that that fear is sufficiently concrete and immediate to constitute a present injury to plaintiff's First Amendment rights, rather than a speculative or illusory allegation of future harm."  *Nitke v. Ashcroft*, 253 F. Supp. 2d 587, 596 (S.D.N.Y. 2003)  "Thus, plaintiffs must 'proffer some objective evidence to substantiate [their]

claim that the challenged conduct has deterred [them] from engaging in protected activity.'" *Id.* (quoting *Bordell v. Gen. Elec. Co.*, 922 F.2d 1057, 1061 (2d Cir. 1991)).  "Allegations of possible future injury do not satisfy the requirements of Art[icle] III."  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Counts 2, 4 and 5 plead only vague and speculative injuries that fall far short of Article III's requirements.  Plaintiffs allege that Defendant Greenblatt "attempted" to infringe their rights by writing the Ticketmaster Letter, but Plaintiffs concede that the effort was "not successful" since Ticketmaster continued selling tickets to their event.  AC ¶¶ 266-68.  Count 2 also alleges that the National Strategy to Counter Antisemitism "makes [Farrakhan] a real and imminent target" and "upon and information and belief" that the initiative is "designed to hinder [Farrakhan's] teaching of Islam[.]"  *Id.* ¶ 262.  What Count 2 fails to allege is a single, concrete, actual injury.  *See Green v. Jackson*, 36 F. App'x 663, 668 (2d Cir. 2002) (plaintiff's allegation that he "will again have negative encounters" with the police, is "too speculative to satisfy the standing requirement"); *Notey v. Hynes*, 418 F. Supp. 1320, 1327 (E.D.N.Y. 1976) ("[T]here is no certainty that the plaintiffs will ever be arrested, accused, indicted, jailed or otherwise, and at this juncture plaintiffs alleged injury is wholly conjectural and speculative.").  Plaintiffs' unsupported speculation about future harm fails to establish standing.

Similarly, Counts 4 and 5 allege a "reasonable likelihood" that state and local efforts to combat antisemitism will chill their wearing of "readily identifiable religious garments," AC ¶ 324, their "desir[e] to attend mosque meetings," *id.* ¶ 342, and the practice of "registered men, [and] occasionally the registered women" to go "door-to-door" offering to sell NOI's newspaper, *id.* ¶ 332.  Once again, none of this pleads an injury-in-fact, because Plaintiffs fail to "proffer some objective evidence to substantiate [their] claim that the challenged conduct has deterred [them]

from engaging in protected activity." *Nitke*, 253 F. Supp. 2d at 596.  Since Plaintiffs cannot identify any "actual, non-speculative chilling effect," *Colombo v. O'Connell*, 310 F. 3d 115, 117 (2d Cir. 2002), they fail to plausibly allege any basis for standing.

### B.   Counts 1-5 Plead No Plausible Nexus Between Plaintiffs' Alleged Injuries and ADL's Alleged Actions

Plaintiffs also fail to plausibly plead that their alleged injuries are fairly traceable to ADL. To the contrary, the Amended Complaint alleges that Morgan State (not ADL) denied Plaintiffs' event request, AC ¶ 232, and that Vimeo (not ADL) cancelled their streaming account, *id.* ¶ 277. *See also id.* Exs. XX, GGG.  Plaintiffs offer no factual support whatsoever for their allegations that these third-party entities "feared reprisal" from ADL, or that ADL even communicated with any of them at all, let alone exercised any control over their decisions. *See New Alliance Party v. FBI*, 858 F. Supp. 425, 433 (S.D.N.Y. 1994) ("Based on the information contained in the complaint, any stigmatization which [plaintiff] suffers could be traced to a myriad of statements and publications made by private individuals and organizations."); *Spear*, 520 U.S. at 167 (standing has not been established if the injury complained of is "the result of the independent action of some third party not before the court" (citing *Lujan*, 504 U.S. 560–61)).

Plaintiffs also fail to allege any causal link between ADL's advocacy efforts and either Farrakhan's "imminent arrest, prosecution, and likely imprisonment," AC ¶ 263, or the chilling effect allegedly felt by NOI's members, *id.* ¶¶ 324, 332, 342. *See Davis v. Garcia*, No. 07 Civ. 9897(CLB), 2008 WL 2229811, at *5 (S.D.N.Y. May 27, 2008) ("Courts are powerless to confer standing when the causal link between the alleged injury and the complained of conduct is too tenuous . . . .").  And while Plaintiffs allege that ADL previously gave presentations to the New York State Police, AC ¶ 307, they do not plausibly allege that this caused them any past or imminent injury.  Plaintiffs simply cannot plead constitutional standing as to Counts 1-5.

### C.   NOI Lacks Prudential Standing To Assert Claims For Its Members

The Amended Complaint also fails to establish that NOI has prudential standing to assert claims on behalf of its members.  *See, e.g.*, *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313 (S.D.N.Y. 2018) ("Organizations do not have standing to assert the rights of their members in § 1983 cases because 'the rights [§ 1983] secures to [are] personal to those purportedly injured.'") (quoting *League of Women Voters of Nassau Cty. v. Nassau Cty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984)).  Indeed NOI fails to name a single NOI member whose First Amendment rights have been chilled, much less provide any evidence of those circumstances. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168 (2d Cir. 2005) ("[A] plaintiff normally lacks associational standing to sue on behalf of its members where 'the fact and extent of injury would require individualized proof.'") (quoting *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004)).  *See also Bano*, 361 F.3d at 714 ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members.").  Accordingly, NOI lacks prudential standing to maintain constitutional claims on behalf of its members.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM FOR CONSTITUTIONAL VIOLATIONS (COUNTS 1-5)

Even if Plaintiffs did have standing to assert Counts 1-5 (and they do not), those claims also fail to state a claim.  "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In applying this standard,

the Court need not credit conclusory legal allegations or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### A.        Plaintiffs Fail To State any *Bivens* Claims (Counts 1-3)

When a plaintiff alleges violations of constitutional rights under color of federal law, such claims are construed as arising under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *See Iqbal*, 556 U.S. at 675 ("[*Bivens*] is the federal analog to suits brought against state officials under [42 U.S.C. § 1983].") (internal citation and quotation marks omitted); *Selvam v. United States*, No. 21-2513-cv, 2022 WL 6589550 (2d Cir. Oct. 11, 2022) (construing civil rights claim against federal officers as a *Bivens* claim), *cert. denied*, No. 22-1121, 2023 WL 6377873 (Oct. 2, 2023). "A *Bivens* action is a judicially-created remedy designed to provide individuals with a cause of action against federal officials who have violated their constitutional rights." *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007).

Putting aside the fact that the Amended Complaint pleads no constitutional violation by ADL, Plaintiffs' purported *Bivens* claims are fatally deficient for two other reasons. *First*, private entities, regardless of whether alleged to have acted under color of law, cannot—as a matter of law—be held liable for damages under *Bivens*, which is limited to claims against *individual* federal officials. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 70 (2001) (declining to infer a *Bivens* remedy "for damages against private entities acting under color of federal law" and explaining that "[t]he purpose of *Bivens* is to deter *individual federal officers* from committing constitutional violations") (emphasis added); *Shapiro v. Holdman*, 14 Civ. 10119 (NRB), 2016 WL 4371741, at *9 (S.D.N.Y. Aug. 15, 2016) ("Relying on *Malesko*, courts have held that *Bivens* claims may not be advanced against a corporate entity."), *aff'd*, 696 F. App'x 532 (2d Cir. 2017). *See also Larry Carter Ctr. v. Catholic Charities*, No. 5:15-CV-0597 (LEK/ATB), 2015 WL 4067559, at *5-6 (N.D.N.Y. July 2, 2015) (*Malesko* precludes *Bivens* liability against nonprofit organization).

*Second*, even if ADL could be held liable under *Bivens* (and it cannot), Counts 1-3 fail for the independent reason that the constitutional claims Plaintiffs allege all arise under the First Amendment, and *Bivens* remedies do not extend to alleged First Amendment injuries.  *See, e.g.*, *Iqbal*, 556 U.S. at 675 ("[W]e have not found an implied damages remedy under the Free Exercise Clause.").[6]  Finally, Count 3 should also be dismissed for the additional reason that it is time-barred.  That claim allegedly arose when Vimeo cancelled NOI's account in July 2020, more than three years before this complaint was filed in October 2023.  *Ruiz v. Fed. Police Dep't*, No. 23-CV-7421 (LTS), 2023 WL 6610762, at *5 (S.D.N.Y. Oct. 10, 2023) (statute of limitations for *Bivens* claim is three years from the date plaintiff knows or had reason to know of his claim).

### B.      Plaintiffs Fail to State a Section 1983 Claim (Counts 4-5)

ADL also cannot be held liable for acting under color of *state* law (Counts 4-5), because its actions are not plausibly attributable to the state.  *See Lurch v. City of New York*, No. 19-cv-11253 (AJN), 2021 WL 1226927, at *3 (S.D.N.Y. Mar. 31, 2021) ("[H]olding a private actor liable for constitutional violations is a high bar.") (citing *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019)).

State action can be attributed to a private entity only when:  (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state (the "compulsion test"); (2) the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies (the "joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by

---

[6] *See also Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Turkmen v. Hasty*, 789 F.3d 218, 268 n.3 (Raggi, J., concurring in part and dissenting in part) (2d Cir. 2015) ("[T]he Supreme Court [has] consistently declined to extend a *Bivens* remedy to a First Amendment claim in *any* context.") (emphasis in original); *Tanvir v. Lynch*, 128 F. Supp. 3d 756, 769 (S.D.N.Y. 2015) (rejecting *Bivens* claims for injury to free association and free exercise rights), *rev'd on other grounds sub nom.*, 894 F.3d 449 (2d Cir. 2018).

the [s]tate," (the "public function test").  *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546

F.3d 255, 257 (2d Cir. 2008) (citation omitted).

Plaintiffs say they rely on the joint action/close nexus test.  AC ¶ 284.  But they fail to

plausibly allege any coordination between ADL and Governor Hochul or Mayor Adams to target

Plaintiffs at all.  At most they allege that, in the past, ADL helped train the State Police to

investigate hate crimes, none of which is alleged to have had any impact on Plaintiffs.  *Id.* ¶ 304.

But even if ADL were *currently* assisting with such training, the mere fact that a "private entity

performs a function that serves the public does not transform its conduct into state action."  *Wade*

*v. Byles*, 83 F.3d 902, 905 (7th Cir.1996).  "And while delegation of a state's entire police power

to a private entity may turn that entity into a state actor, that is not what happened here."  *Miller v.*

*Vohne Liche Kennels, Inc.*, 600 F. App'x. 475, 477 (7th Cir. 2015) (corporate defendant's training

of police canine is not state action subject to § 1983 claim).  Plaintiffs also allege that ADL receives

federal funding from the National Antisemitism Strategy.  AC ¶¶ 145-47.  The exhibits they cite

in support of this allegation make clear that it is patently false.[7]  But even if it were not, "the mere

fact that an entity receives public funding is insufficient to attribute its actions to the state."  *Bailey*

*v. New York Law Sch.*, No. 19-3473, 2021 WL 5500078, at *5 (2d Cir. Nov. 24, 2021) (citing

*Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 268 (2d Cir. 2014)).

Cooperating with law enforcement also does not give rise to a Section 1983 claim.  *Singleton v.*

*Doe*, No. 14-CV-0303 (MKB), 2014 WL 3110033, at *2 (E.D.N.Y. July 7, 2014) ("A mere

allegation that a private party provided information to the police, even if false, is insufficient to

state a claim under § 1983.") (citing *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442,

---

[7] Attached to the Amended Complaint as Exs. DD (Dkt. 33-35), and DD-1 (Dkt. 33-36), is a letter
from ADL to OMB, advocating for funding for 30 federal programs spread among seven groups of federal
agencies.  The letter does not request (much less "demand") funding for ADL.

446 (E.D.N.Y. 2012)).

Likewise, Mayor Adams' passing reference at a press conference to working with "the ADL and other organizations" to "create environments where hate cannot grow in our cities," AC ¶ 315, does not satisfy the "high bar" required to hold a private actor liable for constitutional violations, *Lurch*, 2021 WL 1226927, at *3, any more than it transforms the individual rabbis the Mayor also mentioned into government chaplains. Since Plaintiffs do not plausibly plead that ADL did anything under color of state law, their Section 1983 claims should be dismissed.

Indeed, far from plausibly alleging any constitutional violation, it is *Plaintiffs* who seek to punish *ADL* for exercising it First Amendment rights. Notably, this is not the first time that an entity connected to NOI members has tried to turn the First Amendment on its head by transforming protected activities like petitioning the government and condemning antisemitism into a supposed constitutional tort. In *X-Men Security, Inc. v. Pataki*, 196 F.3d 56 (2d Cir. 1999), the Second Circuit squarely rejected an effort to hold two persons liable for advocating that a housing complex cancel its contract with a company that used NOI members to provide security. Unlike here, in that case the defendants were actually public officials, and the contract was cancelled. Nonetheless, the Court held that "the First Amendment gives any citizen the right to petition the government," *id*. at 72, and "speech by persons who are not decisionmakers and who merely engage in advocacy without threats, intimidation, or coercion is protected by the First Amendment." *Id.* at 71. *See also Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33, 35 (2d Cir. 1983) ("Apparently, appellants believe the First Amendment shields their own critique from any form of official criticism. In our view, this approach would stand the Constitution on its head.").

For all these reasons, Plaintiffs' efforts to transform ADL's advocacy against antisemitism into violations of their constitutional rights should be rejected, and Counts 1-5 dismissed.

16

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY JUDGMENT(COUNT 11)

The Court should also dismiss Plaintiffs' request for a judicial declaration that ADL is "a quasi-governmental entity of the U.S. government."  AC ¶ 457.  The Declaratory Judgment Act authorizes federal courts to make judicial declarations of "rights and other legal relations," but only with respect to a "case of actual controversy within its jurisdiction."  *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 394 (S.D.N.Y. 2011) (quoting 28 U.S.C. § 2201(a)).  As a result, the same constitutional and prudential standing requirements applicable to all claims apply to requests for a declaratory judgment.  *Levin v. Am. Document Servs., LLC*, 828 F. App'x 788, 791–92 (2d Cir. 2020).  The Second Circuit has "articulated a simple test" to determine whether a request for declaratory judgment is justiciable:  "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *Dow Jones & Co. v. Harrods Ltd.*, 346 F. 3d 357, 359 (2d Cir. 2003) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)).  And even where that test is met, district courts have discretion to refuse to exercise jurisdiction over a declaratory judgment action.  *Id.* at 359.

Plaintiffs allege that declaratory judgment is necessary to "clarify[] whether Defendant ADL has the capacity to infringe upon [Plaintiffs]."  AC ¶ 457.  That fails to assert a justiciable claim for multiple reasons.  Plaintiffs lack standing because, for the reasons previously discussed, they assert no plausible injury traceable to ADL, regardless of ADL's "capacity."  Nor would such a declaration serve any "useful purpose."  In fact, the point is moot:  even if ADL *were* a federal agency, it would be immune from suit under *Bivens*, which applies only to individual federal officers.  *Malesko*, 534 U.S. at 70.  Rather, Plaintiffs' request for a declaration about whether ADL hypothetically could have the capacity to violate Plaintiffs' rights is a classic example of seeking

17

an impermissible advisory opinion, because Plaintiffs have stated no plausible violations of any such rights that could be impacted by such a declaration.  *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012) ("courts may not entertain actions for declaratory judgment when the parties are asking for an advisory opinion") (citation and internal quotation marks omitted).

Moreover, as noted above, Plaintiffs' claims fail on the merits.  Their allegations that ADL provides information to the FBI, or that it seeks and receives federal funding, are insufficient to transform it into a "quasi-governmental" agency,[8] particularly since there is no allegation here that ADL has surrendered control of its direction to the federal government.  *See Gilliard v. N.Y. Pub. Library Sys.*, 597 F. Supp. 1069, 1074–75 (S.D.N.Y. 1984) (holding that the New York Public Library is not a "quasi-governmental" entity subject to Section 1983 liability, because it "retains general control over the direction and management of its own affairs") (citing *N.Y. Pub. Library v. PERB*, 45 A.D.2d 271, 274, 277 (1st Dep't 1974), *aff'd*, 37 N.Y.2d 752 (1975)).  Count 11 should be dismissed because it is not justiciable, and otherwise fails to state a claim for relief.

## IV.   PLAINTIFFS FAIL TO PLEAD A CLAIM FOR DEFAMATION (COUNTS 6-7)

Plaintiffs' defamation claims also fail.  As a matter of law, the statements that Plaintiffs are "notoriously" and "virulently antisemitic," and that Farrakhan referred to Jews as "termites," for purposes of defamation law are either nonactionable opinion, or are substantially true. Plaintiffs are also public figures, and fail to plausibly plead actual malice.

---

[8] *See, e.g.*, *Singleton*, 2014 WL 3110033, at *2 (providing information to law enforcement is not action "under color of state law"); *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 173 (E.D.N.Y.2010) (providing information to the police, "even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983."); *Bailey*, 2021 WL 5500078, at *5 ("[T]he mere fact that an entity receives public funding is insufficient to attribute its actions to the state.").

### A.   The Challenged Statements are Nonactionable Opinion

Farrakhan claims that he is not an antisemite because he "has never harmed a hair on the head of any Jewish person," AC ¶ 62; admires violinist Jascha Heifetz, *id.* ¶ 174; and has "acknowledged the existence of 'good Jews,'" *id.* ¶ 176(b), as opposed to all the other "Satanic" ones.  In announcing why Plaintiffs supposedly filed this case, Farrakhan further refined his definition of antisemitism, noting that in his preachings he has never actually "called for the death of those who call themselves Jews," even though "boy, I have thought about such prayers." *See* https://media.noi.org/watch/minister-farrakhan-statement-adl-lawsuit   (12:04-12:10;   12:43-12:48).[9]

The First Amendment may protect Farrakhan's right to believe that silently praying for Jews to die is not antisemitic.  But it does not permit Plaintiffs to use this Court to sanction those who condemn such views as bigotry.  To the contrary, the law squarely protects ADL's right to call out Farrakhan as one of this country's most notorious antisemites, because for purposes of defamation law "numerous cases have held that interpretations of statements as racist or anti-semitic are non-actionable opinion."  *Comic Strip Promotions, Inc. v. Envivo LLC*, 76 Misc. 3d 1229(A), at *3 (Sup. Ct. N.Y. Cnty. 2022) (collecting cases).  *See also Cooper v. Templeton*, 629 F. Supp. 3d 223, 235 (S.D.N.Y. 2022).  Countless cases are in accord.[10]

---

[9] In fact, Farrakhan frequently and publicly calls for the deaths of all manner of persons he opposes. *See, e.g.*, AC Ex. P (Dkt. 33-20) at 10-13.

[10] *See, e.g.*, *Egiazaryan v. Zalamayev*, 880 F. Supp. 2d 494, 509 (S.D.N.Y. 2012) (statement that plaintiff was antisemitic held to be protected opinion); *Ratajack v. Brewster Fire Dep't, Inc.*, 178 F. Supp. 3d 118, 158-59 (S.D.N.Y. 2016) (statement that plaintiff was "racist" held to be pure opinion); *Russell v. Davies*, 97 A.D.3d 649, 659 (2d Dep't 2012) (article accusing plaintiff of being antisemitic held to be pure opinion); *Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 1055 (2d Dep't 2015) (article accusing plaintiff of authoring "racist writings" held to be nonactionable where "there was full disclosure of the facts supporting the opinion"); *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1438–39 (9th Cir. 1995) (epithets against judge, including accusing him of "anti-[S]emitism" held to be protected opinion); *Nat'l Ass'n of Gov't Emps./Int'l Bhd. of Police Officers v. Buci Television, Inc.*, 118 F. Supp. 2d 126, 131 (D. Mass. 2000) (charge of antisemitism held to be nonactionable opinion based on disclosed facts).

Importantly, whether a statement is nonactionable opinion is a threshold question of law for the court.  *Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 223–24 (2d Cir. 1985). Indeed, courts routinely grant pre-answer Rule 12(b)(6) dismissal motions on this basis.[11] Protection for opinion is even greater under New York law than under the First Amendment.  *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 178 (2d Cir. 2000) ("[T]he New York Constitution provides for *absolute protection* of opinions.") (emphasis added); *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152 (1993) (noting New York's "more flexible" and "decidedly more [speech] protective" test for what constitutes a nonactionable opinion).  For this reason alone, Plaintiffs' defamation claims must be dismissed.

Even if the law did not generally treat statements about antisemitism as protected opinion, which it does, the Challenged Statements are nonactionable because each is accompanied by "a recitation of the facts upon which it is based."  *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014). Where a statement "is accompanied by a recitation of the facts upon which it is based or does not imply that it is based on undisclosed facts," it is entitled to absolute protection under the New York Constitution.  *Id.* (citing *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289–90 (1986)).  For example, the Blog Post provides numerous examples of comments by senior NOI officials that support the statement that NOI is "virulently antisemitic."  It quotes NOI's Student National Assistant Minister Ishmael Muhammad as castigating "[t]hose who call themselves Jews but are not, but are of the Synagogue of Satan."  Dkt. 11-14 at 103.  It also quotes NOI Executive Council member Wesley Muhammad describing "the Jewish gay mafia that controls hip-hop and has used hip-hop to

---

[11] *See, e.g.*, *Cooper v. Franklin Templeton Invs.*, No. 22-2763-cv, 2023 WL 3882977, at *4 (2d Cir. June 8, 2023) (affirming dismissal of defamation claim on ground that accusing plaintiff of racism is protected opinion); *Cummings v. City of N.Y.*, No. 21-1380, 2022 WL 2166585, at *3 (2d Cir. June 16, 2022) (statement that plaintiff is "racist" dismissed as pure opinion); *Torain v. Liu*, 279 F. App'x 46, 46 (2d Cir. 2008) (holding that labeling plaintiff a "sick racist pedophile" and "child predator" was protected opinion).

socially engineer Black America," and "Hollywood's evil (Jewish) gay pedophile ring." *Id.*

Similarly, in the Ticketmaster Letter, Greenblatt identifies multiple bases for concluding that Farrakhan is "one of the most notorious antisemites in the country." *Id.* Ex. EEE (Dkt. 33-71) at 2-3. He notes that Farrakhan "refer[s] to Jews as 'termites' and 'satanic,'" and has "denied the magnitude of the Holocaust," and "blamed Jews for its occurrence." *Id.* at 2. The Letter also quotes five statements made by Farrakhan at his annual events in honor of Saviours' Day, and links to two articles on ADL's website that enumerate those and many more of Plaintiffs' inflammatory statements about Jews. *Id.* at 3.[12]

The same holds true for Plaintiffs' claim about Farrakhan's infamous "termite" comment. *See* Siegel Decl. Exs. 1-3. While Farrakhan may be free to try to claim that his boldly headlined tweet "I'm not an anti-Semite.  I'm anti-Termite" was not intended to equate Jews with termites, ADL and Greenblatt also have every right to say that explanation does not pass the laugh test. Since the Challenged Statements are "accompanied by a recitation of the [undisputed] facts upon which [they are] based," *Steinhilber*, 68 N.Y.2d at 289, they are subject to absolute protection under both New York law and the First Amendment.

### B.   Plaintiffs Cannot Plausibly Plead That The Challenged Statements Are Materially False

Even if the Challenged Statements were treated for purposes of defamation as statements of fact, they cannot give rise to liability because they are substantially true. Since the plaintiff has

---

[12] The hyperlinked documents are Dkt. 11-6 at 71-91 (original Complaint Ex. Z) and Siegel Decl. Ex. 4. As several courts have found, hyperlinked documents are considered to be disclosed facts that serve as a basis for finding a challenged statement to be protected opinion. *See, e.g.*, *Mirage Ent., Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 37–38 (S.D.N.Y. 2018) (dismissing defamation claim in part because it was clear that the basis for the speaker's opinion was an article to which speaker provided a link); *Brahms v. Carver*, 33 F. Supp. 3d 192, 200 (E.D.N.Y. 2014) (dismissing defamation claim because internet posting at issue "was accompanied by the news articles on which it was so obviously based"); *Sandals Resorts Int'l, Ltd. v. Google, Inc.*, 27 Misc. 3d 1207(A), at *3 (Sup. Ct. N.Y. Cnty. 2018) (hyperlinks in email constitute disclosed facts), *aff'd*, 86 A.D.3d 32 (1st Dep't 2011).

the burden of proving falsity, courts routinely dismiss defamation claims at the pleadings stage where the facts alleged in the complaint demonstrate the substantial truth of the challenged statement. *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).[13] Defamation law "concentrates upon substantial truth," and a challenged statement cannot be materially false "so long as the substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516-17 (1991) (citation and internal quotation marks omitted).  *See also Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 301–02 (2d Cir. 1986) ("It's not necessary of course that a statement be literally true.  The test is whether the statement, as it was published, had a different effect on the mind of the reader than the actual literal truth.").

"Antisemitism" is defined by the Merriam-Webster dictionary as "hostility toward or discrimination against Jews as a religious, ethnic, or racial group."[14]  Plaintiffs cannot plausibly establish that the statements at issue do not express hostility towards Jews as a group. *See Atamian v. Gentile*, 337 F. App'x 182 (3d Cir. 2009) (finding that libel claim based on statement that plaintiff was antisemitic "lacks any and all merit given his history of anti-Semitic statements and actions, many of which have been recounted in pleadings filed by [the plaintiff] himself"); *Liberty Lobby, Inc. v. Dow Jones & Co.*, 638 F. Supp. 1149, 1152 (D.D.C. 1986) ("To the extent that 'anti-Semitism' might be said to be an objectively verifiable fact, [] it is difficult to imagine a case in which the evidence of it would be more compelling."), *aff'd*, 838 F.2d 1287 (D.C. Cir. 1988).  For example, the Challenged Statement that "Farrakhan refer[ed] to Jews as 'termites'" would not have a different effect on the mind of a reader than Farrakhan's actual statement ("I'm not an anti-

---

[13] *See also Biro v. Condè Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) (granting Rule 12(b)(6) dismissal of defamation claim where statements conceded to be substantially true based on the allegation of the complaint); *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 369 (S.D.N.Y. 1998) (same); *Chung v. Better Health Plan*, No. 96 CIV. 7310(JGK), 1997 WL 379706, at *3 (S.D.N.Y. July 9, 1997) (same).

[14] https://www.merriam-webster.com/dictionary/antisemitism (last visited Dec. 12, 2023).

Semite. I'm anti-termite"). *See* Siegel Decl. Ex. 3. If anything the original statement sounds worse, and even more so when it is viewed on video, since Farrakhan delivered that statement in an especially mocking tone. *See* Siegel Decl. Ex. 1 at 2:00:08-32.

### C.     The Amended Complaint Fails To Plausibly Plead Actual Malice

Finally, Plaintiffs' defamation claims fail for the independent reason that they do not plausibly plead actual malice. Failure to plausibly plead actual malice is also properly decided on a Rule 12(b)(6) motion. *See Brimelow v. N.Y. Times Co.*, No. 21-66-cv, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021), *cert. denied*, 142 S. Ct. 1210 (2022); *Oakley v. Dolan*, 833 F. App'x 896, 899–900 (2d Cir. 2020); *Biro v. Condé Nast*, 807 F. 3d 541, 545–46 (2d Cir. 2015).

### 1.     Plaintiffs Must Plausibly Plead Facts that Could Establish Actual Malice

Plaintiffs have the burden of pleading and proving actual malice for either of two reasons. First, as a matter of New York law, they must plead actual malice pursuant to N.Y. Civil Rights Law § 76-a(2). That statute requires that actual malice be proved in all defamation cases involving "an issue of public interest." *Id.* § 76-a(1)(a)(2). The statute provides that "public interest shall be construed broadly, and shall mean any subject other than a purely private matter." *Id.* § 76-a(1)(2)(d), *see also Aristocrat Plastic Surgery P.C. v. Silva*, 206 A.D.3d 26, 30-31 (1st Dep't 2022). The Challenged Statements plainly relate to a matter of public interest.

Second, as a matter of constitutional law, Plaintiffs must plead actual malice because they are public figures. Libel law recognizes two types of public figures. General purpose public figures include those who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes." *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 345 (1974). A limited purpose public figure is a plaintiff who has:

> (1) successfully invited public attention to his views in an effort to influence others
> prior to the incident that is the subject of litigation; (2) voluntarily injected himself

into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

*Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136–37 (2d Cir. 1984).  Almost thirty years ago, a New York court held that Farrakhan and NOI were public figures.  *See Farrakhan v. N.Y.P Holdings, Inc.*, 168 Misc. 2d 536, 539–40 (Sup. Ct. N.Y. Cnty. 1995), *aff'd*, 238 A.D.2d 197 (1st Dep't 1997).  The allegations of the Amended Complaint and voluminous exhibits attached make plain that they are as much public figures today as they were then.

### 2.     Plaintiffs Fail to Plausibly Plead Actual Malice

In the context of defamation law, "actual malice" is a term of art requiring that the defendant either had actual knowledge of the falsity of the publication, or acted with "reckless disregard of whether it was false or not."  *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173–74 (2d Cir. 2001).  Importantly, "actual malice" does not mean malice in the common-law sense.  It is not related to whether the publication was made with ill will.  *See, e.g.*, *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 8 (1970).

Moreover, "reckless disregard" does not mean "recklessness" in the ordinary, objective sense.  Rather, like knowledge of falsity, "reckless disregard" is a purely *subjective* standard.  Thus, to establish "reckless disregard," a plaintiff must demonstrate, by clear and convincing evidence, that a defendant published a statement while subjectively believing that the statement was probably false.  *Behar*, 238 F.3d at 174 (reckless disregard measures "the speaker's subjective doubts about the truth of the publication").  Stated differently, the plaintiff must demonstrate that "the defendant in fact entertained serious doubts as to the truth of his publication," and had "a high degree of awareness of probable falsity."  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (citations omitted).

Plaintiffs do not come close to plausibly pleading actual malice.  They merely allege that

ADL "knew said statements were false and/or were made with reckless disregard as to their falsity." AC ¶ 354. "These are the type of 'labels and conclusions' and 'formulaic recitation[s] of the elements of a cause of action' that must be disregarded under *Iqbal* and *Twombly*." *Oakley v. Dolan*, No. 17-cv-6903 (RJS), 2020 WL 818920, at *9 (S.D.N.Y. Feb. 19, 2020) (granting motion to dismiss for failure to plead actual malice), *rev'd in part on other grounds*, 980 F.3d 279 (2d Cir. 2020). Indeed, given the exhaustive evidence that ADL has compiled and documented in dozens of publications over the last 40 years, Plaintiffs could not possibly plausibly plead that ADL and Greenblatt "in fact entertained serious doubts as to the truth" that Plaintiffs are antisemites. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice as to Defendants ADL and Greenblatt.

Dated:  New York, New York
        December 12, 2023

<div style="margin-left:40%">

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:*/s/ Nathan Siegel*
   Nathan Siegel

Nathan Siegel
1301 K Street NW
Suite 500 East
Washington, D.C. 20005
Tel. 202-973-4273
nathansiegel@dwt.com

Adam I. Rich
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Tel. 212-489-8230
adamrich@dwt.com

</div>

*Attorneys for Defendants Anti-Defamation League and Jonathan Greenblatt*