IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MINISTER LOUIS FARRAKHAN and THE NATION OF ISLAM,<br><br>Plaintiffs,<br><br>vs.<br><br>ANTI-DEFAMATION LEAGUE, JONATHAN GREENBLATT, individually, and in his official capacity as CEO and National Director of the ANTI-DEFAMATION LEAGUE, SIMON WIESENTHAL CENTER, and RABBI ABRAHAM COOPER, individually and in his official capacity as Director of Global Social Action Agenda for the SIMON WIESENTHAL CENTER,<br><br>Defendants. | Index No. 1:23-cv-09110 |

**<u>MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS</u>**

**<u>SIMON WIESENTHAL CENTER AND RABBI ABRAHAM COOPER'S MOTION TO</u>**

**<u>DISMISS COUNTS 8-10 IN PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

**<u>PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ..................................................................................................3

    A.   The Parties ..................................................................................................3

        1.   Plaintiffs ........................................................................................3

        2.   Defendants .....................................................................................3

    B.   Farrakhan Makes Sweeping Public Statements Regarding Judaism and Jewish People, as Acknowledged in the FAC .................................................3

    C.   Defendants Comment On Farrakhan's Statements ...............................................4

    D.   Plaintiffs' Defamation Claims Against Defendants.............................................4

III.  LEGAL STANDARD .........................................................................................5

IV.   ARGUMENT .......................................................................................................6

    A.   Counts 8 And 9 Should Be Dismissed Because the Allegedly Defamatory Statements Constitute Non-Actionable Opinion (First Element) ...........................7

        1.   The Allegedly Defamatory Statements Do Not Have Sufficiently Precise Meanings ........................................................................8

        2.   The Allegedly Defamatory Statements Are Not Verifiable.......................9

        3.   The Context of the Allegedly Defamatory Statements Clearly Indicates that They are Partisan Opinion ...................................................11

    B.   Counts 8 And 9 Should Be Dismissed Because Plaintiffs Have Not Sufficiently Pleaded that Defendants Made the Allegedly Defamatory Statements with Actual Malice (Third Element) ...............................................14

        1.   The Actual Malice Standard Applies to Plaintiffs ...............................14

        2.   Plaintiffs' Conclusory Allegations Do Not Adequately Plead Actual Malice ..............................................................................15

    C.   Counts 8 and 9 Should Be Dismissed to the Extent that They Rely on Allegedly Defamatory Statements that Fall Outside the Limitations Period.........17

    D.   Counts 8 and 9 Should Be Dismissed with Prejudice Because the Allegations Cannot Be Cured ...................................................................19

    E.   Count 10 Should Be Dismissed with Prejudice Because Plaintiffs Fail to Allege Any of the Elements Of Defamation.......................................................19

V.    CONCLUSION....................................................................................................20

## TABLE OF AUTHORITIES

### CASES

*Arvanitakis v. Lester*,
    145 A.D. 3d 650 (2d Dep't 2016) ....................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................6

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013) .....................................................15, 17

*Brimelow v. N.Y. Times Co.*,
    2021 WL 4901969 (2d Cir. Oct. 21, 2021) ....................................................17

*Buckley v. Littell*,
    539 F.2d 882 (2d Cir. 1976) ..........................................................................2, 8

*Carto v. Buckley*,
    649 F. Supp. 502 (S.D.N.Y. 1986) .............................................................2, 8, 9

*Casper Sleep, Inc. v. Mitcham*,
    204 F. Supp. 3d 632 (S.D.N.Y. 2016) .............................................................6

*Celle v. Filipino Rep. Enters. Inc.*,
    209 F.3d 163 (2d Cir. 2000) .............................................................................8

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014) .............................................................................8

*Church of Scientology Int'l v. Behar*,
    238 F.3d 168 (2d Cir. 2001) ...........................................................................17

*Comic Strip Promotions, Inc. v. Envivo LLC*, 76 Misc. 3d 1229(A), 176 N.Y.S.3d 764
    (N.Y. Sup. Ct. 2022) ...........................................................................*8, 10, 19*

*Cooper v. Franklin Templeton Invs.*,
    No. 22-2763-CV, 2023 WL 3882977 (2d Cir. June 8, 2023) ................8, 12, 13

*Cooper v. Templeton*,
    629 F. Supp. 3d 223 (S.D.N.Y. 2022) ..........................................................2, 9

*Covino v. Hagemann*,
    165 Misc. 2d 465 (Sup. Ct. Richmond Cty. 1995) ...........................................9

*Cummings v. City of New York*,
    No. 19-CV-7723 (CM)(OTW), 2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) .............12, 19

*Edwards v. Nat'l Audubon Soc'y, Inc.*,
   556 F.2d 113 (2d Cir. 1977)................................................................................2, 16

*Egiazaryan v. Zalmayev*,
   880 F. Supp. 2d 494 (S.D.N.Y. 2012)..........................................................2, 11, 15

*Egiazaryan v. Zalmayev*, 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011)...........................*15*

*Elias v. Rolling Stone LLC*,
   872 F.3d 97 (2d Cir. 2017)...........................................................................................8

*Farrakhan v. N.Y.P. Holdings, Inc.*, 168 Misc. 2d 536, 540, 638 N.Y.S.2d 1002 (Sup. Ct.
   1995) ........................................................................................................................*14*

*Ganske v. Mensch*,
   480 F. Supp. 3d 542 (S.D.N.Y. 2020).................................................................10, 12

*Gertz v. Robert Welch, Inc.*, |
   418 U.S. 323 (1974)............................................................................................14, 15

*Gisel v. Clear Channel Commc'ns, Inc.*,
   94 A.D.3d 1525 (N.Y. App. Div. 2012) ...................................................................12

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989).....................................................................................................15

*Holy Spirit Ass'n for the Unification of World Christianity v. Sequoia Elsevier Publg Co.*,
   75 A.D.2d 523 (1st Dep't 1980) ...................................................................................9

*Immuno AG. v. Moor-Jankowski*,
   77 N.Y.2d 235
   567 N.E.2d 1270 (1991)..............................................................................................11

*In re Actos End-Payor Antitrust Litig.*,
   848 F.3d 89 (2d Cir. 2017)...........................................................................................5

*Jankovic v. Int'l Crisis Grp.*,
   822 F.3d 576 (D.C. Cir. 2016) ..................................................................................16

*Jorjani v. New Jersey Inst. of Tech.*,
   2019 WL 1125594 (D.N.J. Mar. 12, 2019)...............................................................19

*Lucente v. Int'l Bus. Machs. Corp.*,
   310 F.3d 243 (2d Cir. 2002)......................................................................................19

*Martin v. Daily News L.P.*,
   121 A.D.3d 90 (1st Dep't 2014) ...............................................................................18

*Masson v. New Yorker Mag.*,
   501 U.S. 496 (1991)...................................................................................................15

*McCafferty v. Newsweek Media Grp., Ltd.*,
   955 F.3d 352 (3d Cir. 2020).........................................................................................7

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP,*
   2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018)................................................16

*Morgan v. NYP Holdings, Inc.,*
   93 N.Y.S.3d 627 (N.Y. Sup. Ct. 2017) ...............................................2, 10, 19

*N.Y. Times Co. v. Sullivan,*
   376 U.S. 254 (1964)..............................................................................2, 14

*Nurriddin v. Bolden,*
   818 F.3d 751 (D.C. Cir. 2016) ........................................................................6

*Palin v. N.Y. Times Co.,*
   940 F.3d 804 (2d Cir. 2019)...........................................................................6

*Prince v. Intercept,*
   634 F. Supp. 3d 114 (S.D.N.Y. 2022)......................................................2, 16

*Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.,*
   178 F. Supp. 3d 118 (S.D.N.Y. 2016)..............................................................8

*Rinaldi v. Holt, Rinehart & Winston, Inc.,*
   42 N.Y.2d 369 (1977) ..................................................................................10

*Russell v. Davies,*
   97 A.D.3d 649,
   948 N.Y.S.2d 394 (2012).............................................................2, 12, 19

*Schatz v. Republican State Leadership Comm.,*
   669 F.3d 50 (1st Cir. 2012)...........................................................................15

*Silverman v. Daily News, L.P.,*
   11 N.Y.S.3d 674 (N.Y. App. Div. 2015) .......................................................11

*Westmoreland v. CBS Inc.,*
   601 F. Supp. 66 (S.D.N.Y. 1984) .................................................................17

## RULES

Cal. Civ. P.C. § 340 ...........................................................................................18

N.Y. Civ. Rights Law § 76 ..........................................................................2, 14

N.Y. C.P.L.R. § 215(3) .....................................................................................17

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(6)...............................................................................5, 19

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Simon Wiesenthal Center ("SWC") and Rabbi Abraham Cooper ("Cooper," and collectively, "Defendants") respectfully submit this Partial Motion to Dismiss Counts 8-10 of the First Amended Complaint ("FAC") filed by Plaintiffs Minister Louis Farrakhan ("Farrakhan") and the Nation of Islam ("NOI," and collectively, "Plaintiffs") on November 2, 2023, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.      INTRODUCTION

The Jewish community in America today is under threat like never before. Antisemitism has reached "historic levels," as noted by the FBI.  *See* Declaration of Julie R. Gerchik ("Gerchik Decl."), Ex. B.[1]  Indeed, notwithstanding the fact that Jewish-Americans represent only **2.4%** of Americans today, they account for approximately **60%** of all religious-based hate crimes.  *See id.*  In their synagogues, their children's Jewish day schools, their kosher markets, on college campuses everywhere, and in fact, just walking down the street, Jews in America today are under siege.  In this context, it is more important than ever for Jewish organizations and individuals—and hopefully all organizations and individuals—to be able to call out antisemitism in order to counter it, without fear of the legal system being weaponized to silence them.  These First Amendment protections are critical, and indeed, foundational to our American democracy.

Plaintiffs filed the present case alleging defamation and seeking ***$4.8 billion*** in damages against the leading advocates of Jewish rights over ***two*** opinion statements by Defendants calling Plaintiffs antisemitic.  Regardless of whether Plaintiffs made their allegations against Defendants in good faith, Plaintiffs' baseless defamation claims should be dismissed because, as a matter of law, the statements were non-actionable opinions that were made without malice.

First, Counts 8 and 9 should be dismissed because both Federal and State Courts in New

---

[1] Pursuant to the concurrently filed Request for Judicial Notice, FBI Director Christopher Wray's congressional testimony is properly the subject for a Request for Judicial Notice, because the document's authenticity or accuracy is undisputed.

York consistently hold that accusations of antisemitism (or similar bigotry) are protected opinions, which cannot serve as the basis for a defamation claim. *See, e.g.*, *Russell v. Davies*, 97 A.D.3d 649, 651, 948 N.Y.S.2d 394 (2012); *Morgan v. NYP Holdings, Inc.*, 93 N.Y.S.3d 627 at *7 (N.Y. Sup. Ct. 2017); *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 507-509 (S.D.N.Y. 2012); *Buckley v. Littell*, 539 F.2d 882 (2d Cir. 1976); *Carto v. Buckley*, 649 F. Supp. 502, 504 (S.D.N.Y. 1986); *Cooper v. Templeton*, 629 F. Supp. 3d 223, 235 (S.D.N.Y. 2022).

Second, Counts 8 and 9 should be dismissed because Plaintiffs do not—and cannot— allege that Defendants made any statements with actual malice as is required. Since the statements at issue involve matters of public interest, and Plaintiffs admit Farrakhan is a public figure, Plaintiffs must prove, by clear and convincing evidence, that the allegedly defamatory statements were made with actual malice. *See* N.Y. Civ. Rights Law § 76(a)(1)-(2); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Plaintiffs have alleged no such facts here, only conclusory statements that Defendants knew their statements to be false when made. In this District, merely denying the truth of a statement and alleging that the speaker was aware of its falsehood does not satisfy the pleading requirements for alleging actual malice. *See Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977); *Prince v. Intercept*, 634 F. Supp. 3d 114, 141 (S.D.N.Y. 2022).

Third, Count 10 should be dismissed on its merits because it utterly fails to allege any statement—much less a defamatory one—by any Defendant. The entire count is a series of narratives about celebrities and athletes (none of whom are a party to the present case) being accused of antisemitism. Not only does this claim lack any substance whatsoever, Plaintiffs seek here to rewrite decades of legal precedent and overturn the First Amendment's protection of free speech.

Defendants respectfully requests that this Court dismiss Plaintiffs' claims with prejudice because Plaintiffs' frivolous claims lack any merit whatsoever and therefore, cannot be cured by amendment.

2

## II.  BACKGROUND

### A.  The Parties

#### 1.  Plaintiffs

NOI is a not-for-profit corporation "comprised of registered members who have acknowledged and accepted the Teachings of the Most Honorable Elijah Muhammad, under the Divine guidance of Minister Farrakhan." Dkt. 33, at ¶15.

Farrakhan joined NOI on October 5, 1955.  Farrakhan became "the National Representative of the Most Honorable Elijah Muhammad," and the leader of NOI in 1967.  Dkt. 33, at ¶¶ 14, 15, 36, 37.

#### 2.  Defendants

SWC is a global Jewish human rights activist organization which "confronts antisemitism, hate, stands with Israel, defends the safety of Jews worldwide, and teaches the lessons of the Holocaust for future generations." Dkt. 33, at ¶¶ 151-152.  Cooper is the Associate Dean and Director of Global Social Action for SWC.  *Id. at* ¶ 19.

### B.  Farrakhan Makes Sweeping Public Statements Regarding Judaism and Jewish People, as Acknowledged in the FAC

As the FAC acknowledges, Farrakhan has made many speeches and statements over the years, some of which have been criticized as antisemitic.

For example, on June 25, 1984, Farrakhan stated: "Now, that nation called Israel never has had any peace in forty years and she will never have any peace because there can be no peace structured on injustice, thievery, lying, and deceit, and using the name of God to shield your dirty religion under His holy and righteous name." *Id. at* ¶ 66.

On July 30, 1984, Farrakhan stated: "The Jews in that day wanted no truth to be told if it conflicted with their selfish desires. They did not care for the truth. They only wanted to hear that which made them comfortable in their web of lies and deceit." *Id.* at ¶ 73.

On or around February 26, 2023, Farrakhan delivered the Nation of Islam's annual "Saviours' Day" speech, in which he stated that "the Synagogue of Satan is not just Jewish

people, but they're a lot of people that joined the Synagogue of Satan, some of them knowingly, others tricked." Gerchik Decl., Ex. A.[2]  On April 5, 2023, Minister Farrakhan posted an excerpt of this video on his official Twitter account, with a statement that "[t]he Synagogue of Satan has destroyed the country." *Id.*  Based on these statements and others that Farrakhan has made over the past 40 years, Farrakhan has been accused of antisemitism. *See generally* Dkt. 33, at ¶¶ 58-77.

**C.** **Defendants Comment On Farrakhan's Statements**

Although the FAC alleges a variety of statements, at issue here (in light of the statute of limitations discussed in Section IV.C, *infra*), on March 1, 2023, SWC published on its website an article entitled, "SWC: Farrakhan's Annual Saviours' Day Anti-Jewish Tirades Continue As Does Silence of Political and Faith Leaders." Dkt. 33, at ¶ 217; Dkt. 33-60.  The article stated that "Farrakhan invoked the New Testament's 'Synagogue of Satan,' to demonize Judaism and those who revere the Torah." *Id. at* ¶ 380.  The same article also quoted Cooper as saying, "We have tracked and denounced Farrakhan and his trail of Jew-hatred and antisemitic incitement for four decades." *Id. at* ¶ 219.

**D.** **Plaintiffs' Defamation Claims Against Defendants**

On October 16, 2023, Plaintiffs filed the above-captioned litigation against Defendants, which alleges, among other claims against other defendants, defamation *per se* against SWC (Count 8) and Rabbi Cooper (Count 9), as well as a claim for de facto defamation *per se* against all defendants in the action (Count 10).  On November 2, 2023, Plaintiffs filed the FAC alleging the same claims against Defendants.  The defamation claims against Defendants in Counts 8 and 9 are based on two statements from one March 1, 2023 article on SWC's website: (1) "Farrakhan invoked the New Testament's 'Synagogue of Satan,' to demonize Judaism and those who revere

---

[2] Pursuant to the concurrently filed Request for Judicial Notice, Farrakhan's speech is properly the subject for a Request for Judicial Notice, because document's authenticity or accuracy is undisputed.

the Torah," and (2) Defendants "tracked . . . Farrakhan and his trail of Jew hatred and antisemitic incitement for four decades." Dkt. 33, at ¶¶ 380, 382, 390. The FAC also includes conclusory language that Defendants made these statements with actual malice. *See id. at* ¶¶ 384, 385, 393.

Plaintiffs further alleged that Defendants made other statements about Farrakhan dating back to 2018, including the following, which are not referred to in Counts 8-10 (claims over these statements are time-barred, *see* Section IV.C):

1. an alleged statement made by SWC's founder, Rabbi Marvin Heir, in a *New York Times* article published on August 1, 2018 that "it would be terrible to give Mr. Farrakhan 'legitimacy' on such a national level by streaming [a] documentary" about him (*id. at* ¶ 159);

2. an alleged statement made by Rabbi Heir in an article posted to SWC's website on May 10, 2019 that "Louis Farrakhan is the Joseph Goebbels of our time" (*id. at* ¶ 162);

3. any alleged statements made in an SWC report published on June 30, 2020 titled "Louis Farrakhan—Four Decades of Bigotry: In His Own Words" (none of which are specifically identified in the FAC) (*id. at* ¶¶ 164-65);

4. an alleged statement made by SWC in a July 5, 2020 post that referred to Minister Farrakhan as "America's Godfather of Antisemitism" (*id. at* ¶ 168);

5. alleged statements made in an SWC report published on December 29, 2020 titled "The 2020 Top Ten Worst Global Antisemitic Incidents," including the headline "Godfather of Hate Spreads Jew Hatred to New Generations," identification of Minister Farrakhan as third on the list, and the statement that Minister Farrakhan had a "35-year campaign against Jews and Judaism" (*id. at* ¶ 169);

6. an alleged statement in an SWC tweet posted on February 27, 2022 that referred to Minister Farrakhan as "the godfather of Jew-hatred in the USA" (*id. at* ¶ 170);

7. alleged statements on SWC's website on December 1, 2022, which referred to Minister Farrakhan as an "anti-Semite" and "America's Godfather of Hate" (*id. at* ¶ 216); and

8. alleged statements in an SWC report published on December 29, 2022 titled "2022 Top Ten Worst Global Antisemitic Incidents," which referred to Minister Farrakhan as "America's Godfather of Hate" (*id. at* ¶ 215).

## III.   LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Actos End-Payor Antitrust Litig.*, 848 F.3d 89, 97 (2d Cir. 2017) (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal marks and citation omitted)).  Courts look to the specific allegations in the complaint to determine whether they plausibly support plaintiffs' legal claims for relief.  *Id.* at 98.  Those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citations omitted).  In determining whether the complaint states a "plausible" claim, "[t]he Court need not credit . . . 'mere conclusory statements' or 'threadbare recitals of the elements of a cause of action.' " *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 637 (S.D.N.Y. 2016) (quoting *Iqbal*, 556 U.S. at 678).

While well-pleaded facts are accepted as true on a motion to dismiss, the Court is not compelled to accept legal conclusions.  *See Iqbal*, 556 U.S. at 678 ("tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (court should not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint") (internal marks and citation omitted).

## IV.   **ARGUMENT**

Under New York law[3], a claim for defamation requires five elements: (1) a written defamatory ***statement of fact*** concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or *per se* actionability.  *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (emphasis added).  Whether a statement is one of fact or opinion is critical to the analysis because courts are not arbiters of whether an opinion can be true or false, nor can proof be adduced to demonstrate the falsity of an opinion.

---

[3] Defendants assume the forum state's laws apply.  In any event, even if Plaintiffs argue that California law should apply, the analysis would not be materially different because California law also protects opinions from defamation claims.  *See Garcia v. Hernandez*, No. SA-CV-2300946-CJC (JDEX), 2023 WL 6531569, at *2 (C.D. Cal. Sept. 19, 2023).

As explained below, Plaintiffs fail to sufficiently plead (at least) the first and third elements of their defamation claims in Counts 8 and 9, and thus their claims necessarily fail. Specifically, *as a matter of law*, the allegedly defamatory statements are non-actionable opinions rather than statements of fact (first element), and Plaintiffs have not adequately alleged that Defendants acted with actual malice (the requisite level of "fault" here) in publishing these statements (third element).  Further, Plaintiffs fail to state a defamation claim in Count 10 because Plaintiffs fail to plead any of the required elements.

### A.   Counts 8 And 9 Should Be Dismissed Because the Allegedly Defamatory Statements Constitute Non-Actionable Opinion (First Element)

In Counts 8 and 9, Plaintiffs identify two allegedly defamatory statements: (1) "Farrakhan invoked the New Testament's 'Synagogue of Satan,' to demonize Judaism and those who revere the Torah," and (2) Defendants "tracked . . . Farrakhan and his trail of Jew hatred and antisemitic incitement for four decades."[4]  Dkt. 33, at ¶¶ 380, 382, 390.

Whether an allegedly defamatory statement is an opinion or fact is a question of law, and the First Amendment protects even "extremely derogatory" opinions.  *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020) ("Under the First Amendment, opinions based on disclosed facts are absolutely privileged […] even when an opinion is extremely derogatory, like calling another person's statements anti-Semitic.") (internal quotations and citations omitted).  Moreover, "the New York Constitution provides for absolute protection of

---

[4] Although not plead in any claim, Plaintiffs also allege that (1) on or about December 29, 2022, SWC published a document entitled, "2022 Top Ten Worst Global Antisemitic Incidents," wherein it referred to Farrakhan as "America's Godfather of Hate," and (2) on or about December 1, 2022, SWC referred to Farrakhan as an "anti-Semite" and "America's Godfather of Hate."  *See* Dkt. 33, at ¶¶ 215, 216.  Even if Plaintiffs properly alleged these statements within their defamation claims (which they did not), their hypothetical claims would fail because these statements are also non-actionable opinions that were not made with actual malice.  These statements would be analyzed in precisely the same manner as the statements the Complaint does identify as the basis for its defamation claims against Defendants, and thus would also fail.

opinions." *Cooper v. Franklin Templeton Invs.*, No. 22-2763-CV, 2023 WL 3882977, at *4 (2d

Cir. June 8, 2023) (citing *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000))

("*Cooper II*"); *see Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014) ("only factual statements are

actionable as defamation or libel . . . New York law protects derogatory statements which may

be categorized as 'opinion' as opposed to 'fact.' ").

    In determining whether a statement is opinion or fact, courts look at the content of the

communication as a whole and consider three factors: (1) whether the specific language at issue

has a precise meaning that is readily understood; (2) whether the statements are capable of being

proven true or false; and (3) whether either the full context of the communication in which the

statement appears, or the broader social context and surrounding circumstances, are such as to

signal to readers or listeners that what is being read or heard is likely to be opinion not fact. *See*

*Cooper II*, 2023 WL 3882977, at *4 (citing *Elias v. Rolling Stone LLC*, 872 F.3d 97, 110 (2d Cir.

2017)). "The dispositive inquiry is whether a reasonable reader could have concluded that the

statements were conveying facts about the plaintiff." *Ratajack v. Brewster Fire Dep't, Inc. of the*

*Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 159 (S.D.N.Y. 2016).

## 1.    The Allegedly Defamatory Statements Do Not Have Sufficiently Precise Meanings

    Courts have widely held that defamation claims based on accusations of antisemitism and

other similar terms are too imprecise in meaning to amount to anything other than opinion.

Dictionary definitions are not sufficient for politically charged terms that have different

meanings and standards to different groups of people. *See Buckley,* 539 F.2d 882 (finding

political rhetoric was opinion because of the "tremendous imprecision of the meaning and usage

of these terms in the realm of public debate," and thus "insusceptible to proof of truth or

falsity"); *Comic Strip Promotions, Inc. v. Envivo LLC*, 76 Misc. 3d 1229(A), 176 N.Y.S.3d 764

(N.Y. Sup. Ct. 2022) ("There is no precise meaning of what constitutes anti-semitism").

    For example, in *Carto v. Buckley*, a plaintiff alleged defamation by a defendant who

stated that plaintiff's magazine was antisemitic and its "distinctive feature is racial and religious

8

bigotry." 649 F. Supp. at 504. The Court explained that the statement about "racial and religious bigotry" was too imprecise to be actionable because "[t]here is no one opinion of what constitutes 'racial and religious bigotry,' or for that matter what constitutes 'bigotry' generally." *Id.* at 508. Thus, the statement "provides no objective criteria by which its truth or falsity can be evaluated." *Id.* at 508. The Court dismissed the action because plaintiffs' position was "entirely lacking in merit." *Id.* at 511; *see also Holy Spirit Ass'n for the Unification of World Christianity v. Sequoia Elsevier Publg Co.*, 75 A.D.2d 523, 24 (1st Dep't 1980) ("In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor.").

Here, the terms "demonize Judaism," "Jew hatred," and "antisemitism" are similarly imprecise in meaning. Akin to *Carto* and other cases, the key terms in Defendants' statements do not have a clear definition that would allow the Court to determine whether the statements are objectively true. Indeed, whereas Plaintiffs state that (from their perspective) Farrakhan has no record of antisemitism and has never "demonized Judaism," Dkt. 33, at ¶¶ 381, 387, 391, Defendants have published multiple opinions that Farrakhan's words are antisemitic. *See supra* Section II.D. Clearly, statements that are understood as antisemitic to some are not viewed as antisemitic to others. *See Covino v. Hagemann*, 165 Misc. 2d 465, 470 (N.Y. Sup. Ct. 1995) ("a certain set of facts might be viewed as racially insensitive by one group of people who share the same political or social views, but another group might view it as noncontroversial and socially acceptable.").

Defendants' statements, no matter how Plaintiffs prefer to characterize them, do not have sufficiently precise or objective meanings, so the first factor weighs decisively in favor of dismissing Counts 8 and 9.

### 2. The Allegedly Defamatory Statements Are Not Verifiable

As a natural consequence of the fact that the term "antisemitism" does not have a precise meaning, courts consistently find that accusations of antisemitism or bigotry are opinions that cannot be proven true or false. *See Cooper*, 629 F. Supp. 3d at 235 ("It is well-established that

an accusation of bigotry is a protected statement of opinion, rather than a defamatory statement of fact capable of being proven true or false"); *Morgan*, 93 N.Y.S.3d 627 at *7 (finding accusations of antisemitism are "hyperbolic and incapable of being proven true or false"); *Comic Strip Promotions*, 76 Misc. 3d 1229(A) (same).

Recently, a court in this District dismissed a defamation claim because the allegations of "xenophobia" could not be proven true or false, even though the term had a fairly clear meaning in the context of the statement. *See Ganske v. Mensch*, 480 F. Supp. 3d 542, 553 (S.D.N.Y. 2020). In *Ganske*, the defendant posted a statement that accused plaintiff of making "xenophobic" statements, among other things. This Court held that such derogatory language actually points away from verifiability, as it is clear evidence of "a classic opinion that amounts to an epithet, fiery rhetoric, and hyperbole, which signals advocacy and a partisan viewpoint." *Id.* (citing *Egiazaryan*, 880 F. Supp. 2d at 507) (internal quotes omitted); *see also Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 380–81 (1977) (protecting opinion "no matter now unreasonable, extreme or erroneous these opinions might be").

This case is similar to *Ganske* and the litany of cases cited above. *See supra*, Section I. Here, Defendants merely stated that Farrakhan's speech "demonize[d] Judaism" and was "antisemitic," which are rhetorical opinions about Farrakhan's words. These statements are not verifiable fact. Indeed, Plaintiffs' own theory of why these statements are "false"—*i.e.*, that Farrakhan privately harbors great "respect" for Judaism and has "acknowledged the existence of 'good Jews,' " and that these facts alone demonstrate that his statements cannot have been antisemitic, Dkt. # 33, at ¶¶ 171, 176(b)—demonstrates that the statements are not susceptible to objective verification.

This case arose precisely due to differing subjective perspectives as to whether Farrakhan's words were antisemitic; whether such statements are true is subjective. Defendants' opinion statements cannot be objectively proven true or false, and therefore the second factor also weighs heavily in favor of dismissal.

10

**3.**     **The Context of the Allegedly Defamatory Statements Clearly Indicates that They are Partisan Opinion**

Lastly, the Court considers the full context of the communication in which each statement appears, or the broader social context and surrounding circumstances, in determining whether a statement is opinion or fact.  *See Cooper II*, 2023 WL 3882977, at *4.

First, partisanship is an indication of an opinion, and the Court will use a "reasonable reader" standard to determine whether statements are partisan opinions.  *See Egiazaryan*, 880 F. Supp. 2d at 507-509; *see also Silverman v. Daily News, L.P.*, 11 N.Y.S.3d 674 (N.Y. App. Div. 2015) (finding that news article describing plaintiff's publications as racist were not actionable because "a reasonable reader would have concluded that he or she was reading opinions, and not facts, about the plaintiff.").  In *Egiazaryan*, this Court specifically found that any reasonable reader would have understood that news articles accusing plaintiff of antisemitism were biased and "voicing no more than a highly partisan point of view."  880 F. Supp. 2d 494, 507-509 (S.D.N.Y. 2012).  In reaching these conclusions, the court considered a number of factors, including that one article was written by a self-proclaimed "advocate" who obtained his information from human rights lawyers with biased points of view, as opposed to an article written by a periodical writer who undertakes a thorough investigation of just the facts.  *See id.* at 509.

Here, the statements at issue were made by SWC, which Plaintiffs acknowledge is "a global Jewish human rights activist organization" that "confronts antisemitism, hate, stands with Israel, defends the safety of Jews worldwide, and teaches the lessons of the Holocaust for future generations."  Dkt. 33, at ¶¶ 151, 152.  Rabbi Cooper is the Director of Global Social Action for SWC.  *Id.* at ¶ 19.  Any reasonable reader would understand that Defendants are advocates for Jewish rights, and are likely to articulate partisan opinions that draw attention to Jewish causes, such as fighting antisemitism.  *See Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 254, 567 N.E.2d 1270, 1280 (1991) (finding that animal activist drawing attention to conservationist concerns were "highly partisan" opinions).  In addition to the obvious bias of the article based on

11

Defendants' open partisanship, it is also clear that the article utilizes rhetoric to address Jewish rights issues from a partisan point of view. *See generally* Dkt. 33-60. Any reasonable reader would understand that Defendants' accusations of antisemitism in this context were partisan opinions, rather than objective statements of fact. Regardless, designating someone who is proud to have acknowledged the sheer existence of "good Jews" as antisemitic is precisely the type of "fiery rhetoric" that courts in New York consistently considers partisan opinion. *Ganske*, 480 F. Supp. 3d at 553; *Egiazaryan*, 880 F. Supp. 2d at 507; *Cummings v. City of New York*, No. 19-CV-7723 (CM)(OTW), 2020 WL 882335, at \*21 (S.D.N.Y. Feb. 24, 2020) (finding insulting statements to be opinions, even though "Plaintiff may disagree with the sources' characterizations of her or wish that the articles painted her in a different light").

Second, when courts look at the full context of the communication in which the statement appears, courts view a statement as pure opinion when the statement is based on public facts and does not imply knowledge of undisclosed facts. *See Cooper*, 629 F.Supp.3d at 235. This District has held that accusations of racism by an employer against a former employee were pure opinions, because the statements were based on a video that went viral. *See id.* at 236. The court held that a "reasonable reader" would have understood that the racism accusations were based only on a public video, rather than any additional undisclosed facts that were discovered from an internal review. *See id.*

Here, Defendants made their statements of opinion in direct response to Farrakhan's widely circulated public speeches. *See Russell*, 97 A.D.3d at 651 (finding context indicated to the reasonable reader that statements were opinions because "the defendants made the statements with express reference to the essay written by the plaintiff"); *Gisel v. Clear Channel Commc'ns, Inc.*, 94 A.D.3d 1525, 1526 (N.Y. App. Div. 2012) ("Because Lonsberry's statements were based on facts that were widely reported by Western New York media outlets and were known to his listeners, it cannot be said that his statements were based on undisclosed facts."). The article's title and contents directly refer to Farrakhan's Saviour's Day speech, and the context of the article is plainly a direct reaction to the very public speech. *See generally* Dkt. 33-60.

Moreover, Farrakhan is not merely a local celebrity, he is "a world renown [*sic*] religious leader," Dkt. 33, at ¶ 396, and "the National Representative of the Most Honorable Elijah Muhammad" for over 55 years, Dkt. 33, at ¶¶ 14, 37, and as such, his speeches are heard nationally.  Defendants did not imply any facts other than those already widely disseminated by Farrakhan, nor would any reasonable reader have inferred any.

Specifically, in the first allegedly defamatory statement, SWC was plainly responding to Farrakhan's speech, in which he stated that "the Synagogue of Satan is not just Jewish people, but they're a lot of people that joined the Synagogue of Satan, some of them knowingly, others tricked."[5]  Based on that statement, SWC reacted and opined that Farrakhan "demonized Judaism" and Jewish people.  In the second allegedly defamatory statement, Defendants articulated the opinion that Farrakhan has a record of antisemitism based on Farrakhan's public statements about Judaism and Jewish people over the past forty years.  *See e.g.*, Dkt. 33, at ¶¶ 66, 73; *Cooper II*, 2023 WL 3882977, at *4.

Because the statements at issue were made by SWC and Cooper, who are Jewish rights advocates with clearly partisan opinions, and were made in response to publicly available information, the context of the communication clearly shows that the statements were Defendants' opinions about Farrakhan.

For the foregoing reasons, Defendants' statements were clearly non-defamatory opinions, and thus Counts 8 and 9 should be dismissed.

---

[5] To the extent that Plaintiffs claim Farrakhan was defamed because he never invoked the Synagogue of Satan at all, Defendants request that the Court take judicial notice of Ex. A to Gerchik Decl., wherein Farrakhan mentioned the "Synagogue of Satan" multiple times.  *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) ("Because falsity is an element of New York's defamation tort, and 'falsity' refers to material not substantially true, the complaint in this case must plead facts that, if proven, would establish that the defendant's statements were not substantially true."); *Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 412 (S.D.N.Y. 2022) ("Because the falsity of the statement is an element of the defamation claim, the statement's truth or substantial truth is an absolute defense.").

**B.**     **Counts 8 And 9 Should Be Dismissed Because Plaintiffs Have Not Sufficiently Pleaded that Defendants Made the Allegedly Defamatory Statements with Actual Malice (Third Element)**

  1.     **The Actual Malice Standard Applies to Plaintiffs**

For the third element of a defamation claim, Plaintiffs must sufficiently plead the heightened standard of "actual malice" for either of two reasons. First, New York law requires actual malice for all defamation cases involving "an issue of public interest." N.Y. Civ. Rights Law § 76(a)(1)-(2). The statute provides that "public interest shall be construed broadly, and shall mean any subject other than a purely private matter." *Id.* at 76-a(1)(2)(d), *see also Aristocrat Plastic Surgery. v. Silva,* 206 A.D.3d 26, 30-31 (1st Dept 2022). Here, Defendants' statements are criticizing Farrakhan's very public speeches, rather than any private matter. *See Mandell v. County of Suffolk,* 316 F.3d 368, 383 (2d Cir. 2003) (holding speech criticizing police department's "systemic racism and anti-Semitism" was a matter of public interest).

Second, public figures must plead actual malice in defamation claims. *See N.Y. Times*, 376 U.S. at 279-80. Federal case law recognizes two types of public figures: (1) the all-purpose public figure who "achieve[s] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts," and (2) the limited-purpose public figure who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).

By their own admission, Plaintiffs qualify as all-purpose public figures given their self-proclaimed statements in the FAC that Minister Farrakhan has been a "***world renown*** [*sic*] religious leader" for 68 years, Dkt. 33, at ¶ 396, and "a national and international leader" with an "incontrovertible legitimacy" that he has purportedly "earned [ ] in America, and around the world, for almost a ***half century***." *Id.* at ¶¶ 160-61. Plaintiffs further allege that their "Mission" is to "deliver the Truth" to "***the whole of humanity***." *Id.* at ¶¶ 3-4 (emphasis added). In fact, a New York Court has already held that Farrakhan is a public figure "by virtue of his very public and prominent position in public affairs in general." *Farrakhan v. N.Y.P. Holdings, Inc.*, 168

14

Misc. 2d 536, 540, 638 N.Y.S.2d 1002 (Sup. Ct. 1995).

Indeed, Plaintiffs concede that they are subject to the actual malice standard by (unsuccessfully) attempting to plead this enhanced level of fault in the FAC. *See id.* at ¶ 384 ("Defendant SWC made such defamatory statements with actual malice[.]"); *see also id.* at ¶¶ 385, 393. As such, the actual malice standard applies to Plaintiffs' claims for defamation.

### 2. Plaintiffs' Conclusory Allegations Do Not Adequately Plead Actual Malice

Plaintiffs must plead facts that, if proven, "demonstrate by clear and convincing evidence that [Defendants] acted with 'actual malice.' " *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 276 (S.D.N.Y. 2013). "Importantly, actual malice does not simply connote ill will or spite; rather it is a term of art denoting deliberate or reckless falsification." *Id.* (citing *Masson v. New Yorker Mag.*, 501 U.S. 496, 499 (1991)). "Reckless" conduct requires that "the defendant must have made the false publication with a high degree of awareness of . . . probable falsity, or must have entertained serious doubts as to the truth of his publication." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (internal citations omitted). "Actual malice, even by way of recklessness, is therefore a difficult standard to meet, and quite purposefully so[.]" *Biro*, 963 F. Supp. 2d at 277. Pleading "actual-malic buzzwords" is not enough. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012).

Plaintiffs' conclusory allegations here fall far short of adequately pleading this standard. *See Egiazaryan v. Zalmayev*, 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011) ("[Plaintiff's] repeated assertion that [defendant] acted with malice is unavailing because it is a legal conclusion not entitled to presumption of truth, and he alleges no facts plausibly supporting that conclusion.") ("*Egiazaryan II*"). Plaintiffs' actual malice allegations in the FAC can be grouped into three categories: (1) Farrakhan has denied Defendants' accusations of antisemitism and allegedly made positive statements about Judaism and Jews, and Defendants have not ceased referring to Minister Farrakhan as an antisemite, Dkt. 33 at ¶¶ 383, 392; (2) Farrakhan's professional reputation is purportedly inconsistent with Defendants' criticisms, *Id. at* ¶¶ 387,

397; and (3) Defendants are biased due to their personal animus against Farrakhan, *Id. at* ¶ 394. None of these allegations are sufficient to plead actual malice.

*First*, Plaintiffs allege that Minister Farrakhan has denied being an antisemite and instead claims he made purportedly positive statements about Judaism and Jews, and Defendants knew or should have known this since they have allegedly tracked Minister Farrakhan's speeches and lectures throughout his career.  *See* Dkt. 33, at ¶¶165, 172-76, 381-83, 392.  However, the "knew or should have known" language "is consistent with a negligence standard," and "actual malice, as explained above, is a subjective standard, requiring recklessness at a minimum."  *Biro*, 963 F. Supp. 2d at 283.  Moreover, actual malice "cannot be predicated on mere denials, however vehement."  *Edwards*, 556 F.2d at 121; *see also Prince*, 634 F. Supp. 3d at 141 ("It is well established that denials without more are insufficient to support a plausible claim of actual malice."); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, 2018 WL 4735717, at *9 (S.D.N.Y. Sept. 29, 2018) ("[A]llegations that a speaker knew of a plaintiff's denial of wrongdoing are insufficient to establish actual malice.").

*Second*, Plaintiffs allege that the accusations that Minister Farrakhan is an antisemite are "incompatible with his calling as a Man of Faith" and damage his reputation as "a world renown [sic] religious leader."  *See* Dkt. 33, at ¶¶387-88, 396-97.  However, conclusory allegations like these claiming that the allegedly defamatory statements are inconsistent with Plaintiffs' professional background and reputation are also not enough to satisfy the high bar for pleading actual malice.  *See Prince*, 634 F. Supp. 3d at 140 (finding allegation that allegedly defamatory statement was "inherently improbable" because of the plaintiff's professional background to be conclusory and insufficient to plead actual malice); *see also Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 595 (D.C. Cir. 2016) (allegation that the plaintiff's political affiliation rendered the allegedly defamatory statement an "inherent improbability" failed to adequately plead actual malice).

*Third*, the FAC alleges that Defendants are biased due to their personal animus against Plaintiffs.  *See* Dkt. 33, at ¶¶ 158, 160, 385, 394.  Plaintiffs contend that Defendants harbor

"hatred, ill-will, spite, and malice" toward Plaintiffs (Dkt. 33, at ¶158; *see also id. at* ¶160) and "spewed the false statements with actual malice for the purpose of generating hatred, contempt, aversion, and to induce an evil and unsavory opinion of Minister Farrakhan in the minds of a substantial number of people." *Id. at* ¶ 385; *see also id. at* ¶ 394. Plaintiffs also allege that Rabbi Cooper has a "history of repeatedly mischaracterizing and falsely labeling Minister Farrakhan." *Id.* at ¶ 391. However, even "alleged ill will toward [Plaintiffs] harbored by" Defendants "provides no basis for plausibly inferring that [Defendants] had any doubts about the truth of [their] statements regarding" Plaintiffs. *Brimelow v. N.Y. Times Co.*, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021) (citing *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001)). Indeed, even a one-sided commentary is not evidence of actual malice. *See Westmoreland v. CBS Inc.*, 601 F. Supp. 66, 68 (S.D.N.Y. 1984) ("The fact that a commentary is one sided and sets forth categorical accusations has no tendency to prove that the publisher believed it to be false."); *see also Biro*, 963 F. Supp. 2d at 285 ("[T]he fact that an article is one sided or fails to include as many positive features about the subject as negative ones has no tendency to prove that the publisher believed it to be false.").

Accordingly, because Plaintiffs fail to identify any specific facts that would show that Defendants intentionally or recklessly disregarded the falsehood of the specific statements at issue, Plaintiffs have failed to adequately allege actual malice as public figures and to plead the fault element of their defamation claims, which serves as yet another independent basis to dismiss Counts 8 and 9.

### C.   Counts 8 and 9 Should Be Dismissed to the Extent that They Rely on Allegedly Defamatory Statements that Fall Outside the Limitations Period

The statute of limitations for defamation claims is one year, and such claims accrue at the time of the first utterance or publication. *See* N.Y. C.P.L.R. § 215(3); *Arvanitakis v. Lester*, 145 A.D. 3d 650, 651 (2d Dep't 2016) ("A cause of action alleging defamation is governed by a one-year statute of limitations, and accrues when the allegedly defamatory statements were originally

uttered.").[6]  Moreover, "the publication of a defamatory statement in a single [publication], although widely circulated and distributed, constitutes one publication, which gives rise to one cause of action, and the statute of limitations runs from the date of that publication."  *Martin v. Daily News L.P.*, 121 A.D.3d 90, 103 (1st Dep't 2014).  The single publication rule also "applies to publications on the Internet, so continuous access to an article posted via hyperlinks to a website is not a republication."  *Id.*

To the extent that Plaintiffs' defamation claims are based on statements in the FAC that were uttered or published before October 16, 2022, those statements are barred by the one-year statute of limitations because Plaintiffs' Initial Complaint was filed (deficiently) on October 16, 2023.  *See* Dkt. 1.  Accordingly, the following statements cannot and do not serve as a basis for Plaintiffs' defamation claims in Counts 8 and 9: (1) the alleged statement made by SWC's founder, Rabbi Marvin Heir, in a *New York Times* article published on August 1, 2018, *id. at* ¶ 159; (2) the alleged statement made by Rabbi Heir in an article posted to SWC's website on May 10, 2019, *id. at* ¶ 162; (3) the alleged statements made in an SWC report published on June 30, 2020, *id. at* ¶¶ 164-65; (4) the alleged statement made in a July 5, 2020 post, *id. at* ¶ 168; (5) the alleged statements made in an SWC report published on December 29, 2020, *id. at* ¶ 169; and (6) the alleged statement in a tweet posted on February 27, 2022, *id. at* ¶ 170.[7]

To the extent that Plaintiffs seek to cure the deficiencies in the FAC by relying on any of the statements identified above, the Court should deny that futile request because of the statute of limitations bar.

---

[6] California law, specifically Cal. Civ. P.C. § 340, also has a one-year statute of limitations for defamation claims.

[7] Even if the statements listed in this Section IV.C. were not time-barred (which they are) and Plaintiffs had properly alleged these statements in Counts 8 and 9 of the FAC (which they did not), their hypothetical defamation claims would fail because these statements are non-actionable opinions, and were not made with actual malice, for all the reasons previously discussed.

**D.**    **Counts 8 and 9 Should Be Dismissed with Prejudice Because the Allegations Cannot Be Cured**

The Court should dismiss Counts 8 and 9 with prejudice because any amendments would be futile. *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."). Plaintiffs have already amended their Complaint once, and were unable to fix the fundamental problems with their defamation claims; the same is true again here.

Indeed, Counts 8 and 9 cannot be cured because the allegations contradict established law. As discussed above, New York courts have consistently held that terms like "antisemitic" or "racist" constitute non-actionable opinion. *See Morgan*, 93 N.Y.S.3d 627 at *7 ("any implication that plaintiff is anti-semitic constitutes a non-actionable opinion which is based on disclosed facts"); *Comic Strip Promotions*, 76 Misc. 3d 1229(A) (holding accusations of antisemitism are opinions, and listing cases finding the same); *Cummings*, 2020 WL 882335, at *20–21, (holding that statements that plaintiff was racist were nonactionable opinions regarding plaintiff's conduct); *Russell*, A.D.3d at 651 (holding that news stories that labeled an essay written by plaintiff as "racist" and "anti-Semitic" were nonactionable opinions). In light of the overwhelming legal precedent, Plaintiffs cannot possibly plead that the statements at issue were anything other than non-actionable opinions and therefore any such amendment would be futile. *See Jorjani v. New Jersey Inst. of Tech.*, 2019 WL 1125594, at *8 (D.N.J. Mar. 12, 2019) (dismissing defamation claims *with prejudice* because "amendment would be futile for the claims grounded in non-actionable opinions or epithets"). Accordingly, the Court should dismiss Counts 8 and 9 with prejudice.

**E.**    **Count 10 Should Be Dismissed with Prejudice Because Plaintiffs Fail to Allege Any of the Elements Of Defamation**

Count 10 should be dismissed because it fails to plead any allegedly defamatory statements against Plaintiffs, *per se* or otherwise, by any Defendant in this case. Plaintiffs appear to ask the Court to rewrite established precedent to add the word "anti-Semite" to the list of

defamation *per se* categories.  However, as discussed above, courts consistently hold that accusations of antisemitism or similar bigotry are non-defamatory opinions.  *See e.g.*, *Morgan*, 93 N.Y.S.3d 627 at *7; *Ganske*, 480 F. Supp. 3d at 553; *Egiazaryan*, 880 F. Supp. 2d at 507.

Even if the term was considered defamatory *per se* for the purposes of satisfying the fifth element of defamation, *per se* actionability (which it clearly is not), Count 10 still fails to plead ***any*** of the other required elements for a defamation claim.  In fact, Count 10 fails to point to any statement at all, let alone a defamatory one about either Plaintiff made by any Defendant. Rather, Count 10 vaguely references any person generally labeled as antisemitic, including various athletes and celebrities—none of whom are even parties to this case.

Thus, the Court should also dismiss Count 10 with prejudice because it is utterly devoid of any proper allegations against Defendants, and thus amendment would be futile.

## V.      CONCLUSION

For the foregoing reasons, the Court should dismiss Counts 8-10 of Plaintiffs' First Amended Complaint as to Defendants with prejudice.

Dated:  December 12, 2023        Respectfully submitted,


By: *_/S/ Julie R. Gerchik_*
Patricia L. Glaser (admitted *pro hac vice*)
Julie R. Gerchik (admitted *pro hac vice*)
GLASER WEIL FINK HOWARD JORDAN &
SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Email:  pglaser@glaserweil.com
Email: jgerchik@glaserweil.com
Email: esu@glaserweil.com
Telephone 310.282.6206 (J. Gerchik)


*Attorneys for Defendants*
*Simon Wiesenthal Center and*
*Rabbi Abraham Cooper*