UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
FARRAKHAN et al.,                      :
                       Plaintiffs,     :
                                       :    23cv9110 (DLC)
           -v-                         :
                                       :    OPINION AND
ANTI-DEFAMATION LEAGUE, et al.,        :         ORDER
                                       :
                       Defendants.     :
                                       :
-------------------------------------- X

APPEARANCES:

For plaintiffs Nation of Islam and Louis Farrakhan:
Abdul Arif Muhammad, Sr.
1515 Market Street Ste 1200
Philadelphia, PA 19102

Michael K. Muhammad
Muhammad Law Firm
1700 Pacific Avenue Ste 3740
Dallaas, TX 75201

For plaintiff Louis Farrakhan:
Sa'ad A. Muhammad
Power and Dixon PC
1525 East 53rd St Ste 447
Chicago, IL 60615

For defendants Anti-Defamation League and Jonathan Greenblatt:
Nathan Ellis Siegel
Davis Wright Tremaine LLP
1301 K St Ste 500 East
Washington, DC 20005

Adam Ivan Rich
Davis Wright Tremaine LLP
1251 Avenue of the Americas
New York, NY 10020

For defendants Simon Wiesenthal Center and Abraham Cooper:
Julie Gerchick
Patricia L. Glaser

Glaser Weil Fink Howard Jordan & Shapiro LLP
10250 Constellation Blvd Ste 1900
Los Angeles, CA 90067

DENISE COTE, District Judge:

Plaintiffs Louis Farrakhan and Nation of Islam ("NOI") brought suit against the Anti-Defamation League ("ADL"), its CEO Jonathan Greenblatt, the Samuel Wiesenthal Center ("SWC"), and Abraham Cooper, SWC's Associate Dean & Global Social Action Director.  Plaintiffs allege defamation and, against the ADL, a variety of First Amendment violations.  Defendants have moved to dismiss the plaintiffs' Second Amended Complaint ("SAC").  For the following reasons, the motions are granted.

## Background

On January 4, 2024, plaintiffs filed the 150-page SAC, along with 672 pages of exhibits.  The SAC, which details nearly a century's worth of grievances, alleges several instances of defamation and, as against the ADL, various violations of the plaintiffs' First Amendment rights.  At their core, plaintiffs' claims are that by repeatedly referring to plaintiffs as antisemitic, defendants have defamed them and created a chilling effect on their religious practices.  Plaintiffs seek $4.8 billion in damages as well as a declaratory judgment that the term "anti-Semite" is defamatory per se and that the ADL is a quasi-governmental actor that violated plaintiffs' First

Amendment rights.  Plaintiffs also seek to enjoin defendants
from calling them antisemitic or taking any steps to urge third
parties to disassociate with them.

The First Amendment claims allege that the ADL has taken
steps to censor plaintiffs, including by pressuring Ticketmaster
in a 2023 open letter not to sell tickets for NOI's yearly
Savior's Day event, and by causing Morgan State University in
2023 to refuse NOI's request to use its facilities as a venue
for an NOI event.  Plaintiffs also allege that the ADL's work
with various governmental actors to combat antisemitism has had
a chilling effect on NOI, its members, and its prospective
members, including by making NOI less willing to hold events in
New York and its members less willing to sell NOI's religious
newspaper or wear identifiable garments in public.

The defamation claims are centered around the 2023
Ticketmaster open letter and several blog posts and articles
posted to the ADL and SWC websites in 2022 and 2023.  The
defamation claims against the ADL and Greenblatt relate to three
written communications, two of which concern NOI's annual
Saviour's Day conference held in February 2023.  The claims
against SWC and Cooper relate to an article about the Saviour's
Day conference posted on the SWC website in March 2023.

3

1.   October 2022 Blog Post

The earliest ADL communication at issue is a blog post published on the ADL's website on October 20, 2022.  The post is largely about the rapper Kanye West and his public statements, but it also refers to the "virulently antisemitic Nation of Islam and its leader, Louis Farrakhan."

2.   Open Letter to Ticketmaster Before February 2023
NOI Event

The next ADL communication is an open letter to the CEO of Ticketmaster signed by Greenblatt as CEO and National Director of the ADL ("Ticketmaster Letter").  The Ticketmaster Letter was published on ADL's website on February 9, 2023, prior to the February 26 Savior's Day conference.  The letter stated that the ADL was "not requesting any particular action from [Ticketmaster] as it relates to your commercial activities" but "would like to make you aware of Farrakhan's past behavior and statements."

The Ticketmaster Letter referred to Farrakhan as "one of the most notorious antisemites in the country."  It also contained several direct quotes from Farrakhan's prior Savior's Day speeches, including, inter alia, his 2019 statement that "[p]edophilia and sexual perversion institutionalized in Hollywood and the entertainment industries can be traced to Talmudic principles and Jewish influence"; his 2017 statement

that "[t]hose who call themselves 'Jews,' who are not really Jews, but are in fact Satan.  You should learn to call them by their real name: 'Satan'"; and his 1996 statement that "[y]ou are not real Jews . . . . You are the synagogue of Satan, and you have wrapped your tentacles around the U.S. government." Farrakhan does not challenge the accuracy of the direct quotes but instead challenges the portions of the Letter that refer to Farrakhan as an antisemite and state that Farrakhan has referred to "Jews as 'termites' and 'satanic.'"

     3.   February 2023 Blog Post

The next communication is a February 27, 2023 blog post published on the ADL website after the February 26 Savior's Day conference with the title "Farrakhan Predicts Another Holocaust, Espouses Antisemitism and Bigotry in Saviours' Day Speech."  The post included direct quotes from the speech, such as "[t]he Synagogue of Satan has destroyed the country," as well as the following:

> A Jewish man said to me, 'You know, we say never
> again.  Never again will we be in the oven.  Never
> again.'  I said, 'Hold it.'  You can say that to men,
> but you can't say that to God.  Because the Bible
> says, behold the day cometh that shall burn -- as a
> what? -- as an oven.

Again, Farrakhan does not challenge the accuracy of the direct quotes but rather the headline's statement that "Farrakhan Predicts Another Holocaust."

     4.   March 2023 SWC Article

The claims against SWC and Cooper involve an article published on the SWC website on March 1, 2023 "condemning [Farrakhan's] anti-Semitic and anti-Judaic diatribes during the Nation of Islam's annual conference in Chicago."  Farrakhan challenges two statements in the SWC article: first, that "Farrakhan invoked the New Testament's 'Synagogue of Satan' to demonize Judaism and those who revere the Torah," and second, that SWC has "tracked and denounced Farrakhan and his . . . antisemitic incitement for four decades."

Plaintiffs filed their initial complaint, which was 76 pages long and contained 504 pages of exhibits, on October 16, 2023.  On November 2, plaintiffs filed a 90-page amended complaint, along with 611 pages of exhibits.  On December 12, 2023, the defendants moved to dismiss the First Amended Complaint.  In response, the plaintiffs filed the 150-page SAC, and its 672 pages of exhibits, on January 5, 2024.[1]  On January 19, the ADL defendants moved to dismiss the SAC pursuant to Fed. R. Civ. P. 8, 12(b)(1), and 12(b)(6).  The SWC defendants moved to dismiss claims 8 to 10 of the SAC on the same day.  The motions were fully submitted on February 9, 2024.

---

[1] An Order of December 13, 2023 informed the plaintiffs that it was "unlikely" that they would have a further opportunity to amend.

### Discussion

The defendants have moved to dismiss on several grounds: the prolixity of the SAC, the plaintiffs' lack of standing to bring claims 1 to 5, and the failure to state a claim with respect to any of the claims.  This Opinion addresses defendants' arguments in that order.

I.   Fed. R. Civ. P. 8

The ADL's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 8 ("Rule 8") is denied.  The ADL argues that the SAC violates Rule 8(d)'s requirement that a complaint be "simple, concise, and direct," and Rule 8(a)'s requirement that the statement of a plaintiff's claims be "short and plain."

The SAC is unnecessarily voluminous and at times difficult to follow.  "Unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted).  "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id.  Even though challenging, it is possible to comprehend the allegations and relief sought in the SAC; thus, the Court declines to dismiss the SAC on this basis.

II.  Standing

The ADL argues that six claims -- claims 1 to 5 and 11 -- should be dismissed pursuant to Rule 12(b)(1) because plaintiffs allege no injury-in-fact in relation to those claims and therefore lack Article III standing.  In these claims, the plaintiffs assert that the ADL is a federal and state actor that has violated the First and Fourteenth Amendments of the United States Constitution.  Plaintiffs have not alleged sufficient facts to support standing for claims 1 to 5.[2]  They are thus dismissed without prejudice.  See Clementine Company, LLC v. Adams, 74 F.4th 77, 90 n.4 (2d Cir. 2023) (noting that dismissals for lack of Article III standing must be without prejudice).

Article III standing is "always an antecedent question, such that a court cannot resolve contested questions of law when its jurisdiction is in doubt."  Do No Harm v. Pfizer Inc., 96 F.4th 106, 120-121 (2d Cir. 2024) (citation omitted).  Further, "[a]s with any other matter on which the plaintiff bears the burden of proof, each element of standing must be supported with the manner and degree of evidence required at the successive stages of the litigation."  Id. at 114 (citation omitted).

---

[2] Claim 11 is a request for declaratory judgment and is addressed infra.

Where, as here, the defendants move to dismiss a complaint based on a "facial" challenge to the plaintiffs' standing (meaning that the defendants do not offer any evidence of their own), the court must "determine whether, accepting as true all material factual allegations of the complaint, and drawing all reasonable inferences in favor of the plaintiffs, the complaint alleges facts that affirmatively and plausibly suggest that the plaintiffs have standing to sue." New York v. Yellen, 15 F.4th 569, 575 (2d Cir. 2021) (citation omitted).  At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss" the court presumes "that general allegations embrace those specific facts that are necessary to support the claim." New England Carpenters Guaranteed Annuity and Pension Funds v. DeCarlo, 80 F.4th 158, 180 (2d Cir. 2023) (citation omitted).  Finally, a plaintiff must demonstrate standing for each claim and form of relief sought.  TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021).

To establish standing, a plaintiff must show that

(1) they suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Do No Harm</u>, 96 F.4th at 113 (citation omitted).  An injury is
"concrete" if it is "real, and not abstract."  <u>Soule v.</u>
<u>Connecticut Assoc. of Schools, Inc.</u>, 90 F.4th 34, 45 (2d Cir.
2023) (citation omitted).  An injury is "actual or imminent" if
it has actually happened or is "certainly impending."  <u>Id.</u>
(citation omitted).

     The "causal connection" element of standing, which is also
described as "the requirement that the plaintiff's injury be
fairly traceable to the challenged action of the defendant, and
not the result of the independent action of some third party not
before the court, does not create an onerous standard."  <u>Atares</u>
<u>Bais Yaakov Academy of Rockland v. Town of Clarkstown</u>, 88 F.4th
344, 352-353 (2d Cir. 2023) ("<u>ABY Academy</u>").  "It requires no
more than <u>de facto</u> causality."  <u>Id.</u> at 353.  It does not require
that the plaintiff plead facts to support an inference of
proximate causation.  <u>Id.</u>

     Finally, "[t]o satisfy the redressability element of
Article III standing, a plaintiff must show that it is likely,
as opposed to merely speculative, that the alleged injury will
be redressed by a favorable decision."  <u>Soule</u>, 90 F.4th at 47
(citation omitted).  A plaintiff need not show that a favorable
decision will relieve their every injury.  <u>American Cruise Lines</u>
<u>v. United States</u>, 96 F.4th 283, 286 (2d Cir. 2024).  A remedy

"that would serve to eliminate any effects of the alleged violation that produced the injury is sufficient."  Id. (citation omitted).

   A.   Claim 1

   The defendants contend that Claim 1 fails to allege an injury fairly traceable to ADL.  Claim 1 relates to Morgan State University's ("MSU") denial of Farrakhan's application to speak at its Fine Arts Center in 2023.  The SAC alleges, "[u]pon information and belief," that after MSU allowed Farrakhan to speak at the Fine Arts Center in 2014, ADL "either put pressure on the administration, or threatened to lobby against funding for Morgan State, if the administration allowed Minister Farrakhan to associate and peaceably assemble" with the University's students.  The SAC further alleges that ADL "used its power and authority derived from its close association with the federal government and caused Morgan State to reject the application" in 2023.  In support of that theory, Farrakhan points to the Ticketmaster Letter and a 1994 ADL report that stated in relevant part that "[w]hat [ADL] can and should do is impose an obligation on those who deal with [Farrakhan], or, in the case of universities, give him a platform."

   The SAC alleges "[i]n the alternative" that MSU rejected the 2023 application "because of the relentless

11

misrepresentation of Minister Farrakhan by Defendant ADL as
being, among other things, 'antisemitic.'"  In other words, the
ADL's "years of falsely labeling Minister Farrakhan as 'anti-
Semitic' injured him in that it impaired his reputation to the
degree that it caused the administration of Morgan State to not
allow him to speak on its campus."

The SAC fails to plead that the plaintiffs' injury from
MSU's 2023 refusal of its forum is fairly traceable to the ADL.
Although the pleading standard for causation is not onerous, it
requires allegations that support a finding of de facto
causality.  The SAC's reliance on the ADL's years of advocacy
does not suffice to meet this standard.  If standing were found
to be present here, then the plaintiffs would have standing to
sue the ADL for virtually any refusal by a third party to
conduct business with the plaintiffs.

B.   Claim 2

The defendants assert that Claim 2 fails to allege a
concrete and actual injury.  Claim 2 alleges that by "actively
assisting" in the development of the Biden administration's
"U.S. National Strategy to Counter Antisemitism," which
President Biden signed on May 25, 2023, the ADL "as a federal
actor in concert with the federal government, has engaged in
actions that infringe[] upon Minister Farrakhan's First

Amendment right to free exercise of religion."  The claim alleges that the "National Strategy will, on one hand, provide the legal justification to officially facilitate the continued infringement upon the free exercise of Minister Farrakhan's religion or, on the other hand, provide the legal justification to facilitate the imminent arrest, prosecution, and likely imprisonment of Minister Farrakhan."

Claim 2 fails to plead an injury in fact that is concrete and particularized.  Moreover, nothing in the voluminous SAC comes close to demonstrating that the alleged threat of prosecution of Farrakhan is "actual or imminent, as opposed to conjectural or hypothetical."  <u>Do No Harm v. Pfizer</u>, 96 F.4th at 113.  It is noteworthy that the White House strategy document, which is attached as an exhibit to the SAC, states that it "does not purport to alter or preempt existing statutes, regulations, policies, or the requirements of the Federal, state, or local agencies that enforce them."  Accordingly, the plaintiffs do not have standing to claim that the ADL has violated its rights by assisting the federal government in its development of the National Strategy.

C.   Claim 3

The defendants contend that Claim 3 fails to allege an injury fairly traceable to the ADL.  Claim 3 alleges that Vimeo,

an online video streaming service, cancelled NOI's user account due to violations of Vimeo's Terms of Service and Community Guidelines, including Vimeo's policies against sharing videos that are "hateful, harass others, or include defamatory or discriminatory speech." Vimeo's cancellation notice included a hyperlink to an ADL article titled "Farrakhan Remains Most Popular Antisemite in America." Claim 3 alleges that ADL "used its authority and sanctioning by the FBI to cause 'Vimeo' to cancel" its account. Claim 3 seeks monetary damages and an injunction preventing ADL from "seeking to interfere with the Nation of Islam's relationships with other social media platforms by having said platforms cancel Nation of Islam accounts."

While the plaintiffs have alleged an injury inflicted by a third party that is concrete, they have failed to plead that this injury is causally connected to ADL's advocacy. While the pleading of causation requires no more than allegations of de facto causality, mere citation by a third party to ADL's general advocacy is insufficient. Any other finding would give the plaintiffs standing to sue ADL whenever a third party injures the plaintiffs and refers to the ADL's publications to justify its decision. The law of standing requires more linkage between a defendant's activities and a plaintiff's injury.

D.   Claims 4 and 5

The ADL contends that Claims 4 and 5 must be dismissed because these claims do not plead an injury in fact or any causal link between its advocacy and any injury.  Claims 4 and 5 allege that the ADL acted under color of state law to violate NOI's free exercise and freedom of association rights.  The actions allegedly taken by ADL under color of state law are 1) transmitting data on hate and bias incidents to the New York State Division of Human Rights; 2) training the New York State Police in conducting hate crime investigations; and 3) serving as "the primary agent used by the State of New York to coordinate, implement, and oversee state departments and agencies in furtherance of their implementation of Defendant ADL's National Strategy to combat 'antisemitism.'"  At its core, the allegation is that because 1) the ADL's definition of antisemitism has been officially adopted by the State of New York; 2) the ADL transmits information on "hate and bias incident[s]" to state actors; and 3) New York City and State officials have indicated an intention to prosecute hate crimes, NOI and its members face possible law enforcement sanctions that create a chilling effect on their rights of free exercise and association and cause reputational harm.

15

Claim 4 alleges three injuries to NOI: reputational harm, the threat of sanctions by the City of New York, and a chilling effect on NOI's desire to hold national events in New York. Claim 5 alleges possible "disassociation" of members due to impairment of reputation, a chilling effect on association with non-members, and the chilling effect of being targets of ADL surveillance.

None of the alleged injuries are cognizable.  The threat of sanctions is, as with Claim 2, entirely speculative and thus not a sufficient basis for standing.  As for the alleged chilling effect on NOI's desire to hold national events in New York, "[s]uch 'some day' intentions -- without any description of concrete plans, or indeed even any specification of when the some day will be -- do not support a finding of the 'actual or imminent' injury" that standing requires.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 (1992).  Further, a

> chilling effect arising merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual

is not "an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."  Clapper v. Amnesty Intern. USA, 568 U.S. 398, 418 (2013) (citation omitted).

16

Moreover, the reputational harm alleged in this claim does not suffice for standing purposes.  The SAC alleges that ADL's "historical and contemporary actions of spying on and surveilling the Nation of Islam, coupled with its 'partner[ship] with the City of New York to guide its law enforcement departments in the apprehension and prosecution of people it determines [are] using 'hate,' serve[] to diminish the Nation of Islam's reputation in the community."  In other words, the alleged reputational harm will occur only if NOI or its members commit and are then prosecuted for hate crimes.  Because the injury alleged relies on speculative future actions by plaintiffs themselves along with New York State and City officials, it is not the "predictable effect" of ADL's own conduct.  ABY Academy, 88 F.4th at 352 (citation omitted).

Claims 4 and 5 also allege injuries as to NOI's members. But "an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983," because the rights secured by § 1983 are "personal to those purportedly injured."  Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (citation omitted).

III. 12(b)(6)

The ADL defendants moved to dismiss claims 6, 7, 10, and 11 pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiffs have failed to state a claim.  The SWC defendants moved to

dismiss the claims against them, claims 8 to 10, for the same reason.  Defendants are correct.  Plaintiffs have failed to state any claim upon which relief can be granted.

Under Rule 12(b)(6), a party "must plead enough facts to state a claim to relief that is plausible on its face."  Green v. Dep't of Educ. of N.Y., 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs."  Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted).

A.   Defamation Claims

Farrakhan brings four claims for defamation based on eight challenged statements contained in four communications. Defendants argue that the challenged statements constitute non-actionable opinions and that Farrakhan has not pled actual malice.  They are correct.

18

The elements of a cause of action for defamation under New York law are

> 1) a written defamatory statement of fact concerning the plaintiffs; 2) publication to a third party; 3) fault (either negligence or actual malice depending on the status of the libeled party); 4) falsity of the defamatory statement; and 5) special damages or per se actionability (defamatory on its face).

Electra v. 59 Murray Enterprises, Inc., 987 F.3d 233, 259 (2d Cir. 2021) (citation omitted).[3]

Farrakhan does not dispute that he is a public figure.  As such, he must show that the statements were made with "'actual malice' -- that is, with knowledge that the statements were false or with reckless disregard as to their falsity."  Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015).  At the motion to dismiss stage, a plaintiff must "plead 'plausible grounds' to infer actual malice by alleging 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' actual malice."  Id. at 546 (citation omitted).

Because falsity of the challenged statement is an element of the cause of action, "statements that do not purport to convey facts about the plaintiff, but rather express certain

---

[3] Defendants cite New York law in their briefing.  Plaintiffs do not dispute that New York law applies to this action.  "[W]here the parties agree that [New York] law controls, this is sufficient to establish choice of law."  Insurance Company o the State of Pennsylvania v. Equitas Insurance Limited, 68 F.4th 774, 779 n.2 (2d Cir. 2023).

kinds of opinions of the speaker, do not constitute defamation."
Elias v. Rolling Stone LLC, 872 F.3d 97, 110 (2d Cir. 2017)
(citation omitted) (emphasis in original).  In discerning
whether a statement is one of fact or opinion under New York
law, courts consider a non-exclusive list of factors that
includes

> (1) whether the specific language in issue has a
> precise meaning which is readily understood; (2)
> whether the statements are capable of being proven
> true or false; and (3) whether the full context of the
> communication in which the statement appears or the
> broader social context and surrounding circumstances
> are such as to signal to readers that what is being
> read or heard is likely to be opinion, not fact.

Id. (citation omitted).

Even where a challenged statement contains an opinion,
there is an "important distinction between a statement of
opinion that implies a basis in facts which are not disclosed to
the reader or listener and a statement of opinion that is
accompanied by a recitation of the facts on which it is based or
one that does not imply the existence of undisclosed underlying
facts."  Id. at 110-111 (citation omitted).  Thus, although an
"expression of pure opinion is not actionable, a statement of
opinion that implies that it is based upon facts which justify
the opinion but are unknown to those reading or hearing it, is a
'mixed opinion' and is actionable."  Stega v. New York Downtown
Hospital, 31 N.Y.3d 661, 674 (2018) (citation omitted).

1.   Non-Actionable Opinion

The challenged statements referring to Farrakhan as antisemitic are non-actionable statements of opinion.  The communications in which they were published contain "a recitation of the facts on which [they are] based" -- namely, direct quotes from Farrakhan.  See Elias, 872 F.3d at 110-111 (citation omitted).  Thus, the statements calling Farrakhan antisemitic cannot be "reasonably understood as implying the assertion of undisclosed facts justifying the opinion."  Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d 163, 178 (2d Cir. 2000) (citation omitted).

The challenged ADL blog post title ("Farrakhan Predicts Another Holocaust") appears at first blush to be a statement "capable of being proven true or false," Elias, 872 F.3d at 110 (citation omitted), but "the full context of the communication in which the statement appears [and] the broader social context and surrounding circumstances are such as to signal" to readers that what is being read "is likely to be opinion, not fact." Id. (citation omitted).  The full title of the post, and its lede, indicate that its subject is the Savior's Day speech.  The post contains direct quotes from that speech, including one that could be fairly interpreted as a reference to the Holocaust. The full context of the communication indicates that its title

21

is an interpretation of the facts disclosed within the article. See id. at 111.  The same is true for the statement in the SWC article that Farrakhan "invoked the New Testament's 'Synagogue of Satan' to demonize Judaism."

      2.   Statements of Fact

The portion of the Ticketmaster Letter that implies Farrakhan has referred to "Jews as 'termites' and 'satanic'" does have "a precise meaning which is readily understood." Elias, 872 F.3d at 110 (citation omitted).  It is either true or false that Farrakhan has said so.  For these statements, however, Farrakhan has not alleged facts allowing a reasonable inference of either falsity or actual malice.

As to the implication that Farrakhan has referred to Jews as satanic, the Ticketmaster Letter ends with the hyperlinked statement that "[y]ou can learn more about Louis Farrakhan and the Nation of Islam on our website."  The words "Louis Farrakhan" are hyperlinked; clicking the link leads to a webpage on which further direct quotes from Farrakhan are listed and which is itself attached as an exhibit to the SAC.  Several of those direct quote include Farrakhan's use of the phrase "satanic Jews."  Thus, as to this challenged statement, Farrakhan has failed to allege falsity, an essential element of a defamation claim.

22

Finally, the SAC has not pled a defamation claim regarding Farrakhan's use of the word termites.  As the SAC concedes, Farrakhan has stated the following: "When they talk about Farrakhan, call me a hater, you know how they do -- call me an anti-Semite.  Stop it, I'm anti-termite!"  Again, Farrakhan has not pled facts that would "raise a reasonable expectation that discovery will reveal evidence" that Greenblatt or the ADL made the statement with knowledge of or reckless disregard as to the statement's falsity.  Biro, 807 F.3d at 546 (citation omitted).  To the contrary, the SAC itself alleges facts that would dispel any such expectation.

Thus, Farrakhan has not stated a defamation claim as to any of the challenged statements.  The defamation claims are dismissed pursuant to Rule 12(b)(6).

IV.  Declaratory and Injunctive Relief

The claims for declaratory and injunctive relief fare no better.  Claim 11 seeks a declaratory judgment that the ADL is a "quasi-governmental entity of the federal government."  Claim 10 seeks a declaratory judgment that the term "antisemite" and its variations are defamatory per se.  Plaintiffs also seek an injunction precluding defendants from calling plaintiffs antisemites.

District courts have "broad discretion to decline jurisdiction" under the Declaratory Judgment Act ("DJA").

_Admiral Insurance Company v. Niagara Transformer Corporation_, 57
F.4th 85, 100 (2d Cir. 2023) (citation omitted); see 28 U.S.C. §
2201(a).  This is so "even in circumstances when a declaratory
judgment would serve a useful purpose in clarifying and setting
the legal relations in issue or terminate and afford relief from
the uncertainty, insecurity, and controversy giving rise to the
proceeding."  Id. at 99 (citation omitted).

Here, the requested declaratory judgments would not serve a
useful purpose.  The plaintiffs lack standing on each claim that
relies on the theory that the ADL is a federal actor, and
plaintiffs have not stated a claim for defamation regarding any
of the challenged statements.  As such, a declaratory judgment
would not clarify any of the legal relations in issue.  The
Court therefore declines to exercise jurisdiction over claims 10
and 11.

Finally, enjoining defendants from expressing their beliefs
regarding plaintiffs would amount to a "judicial order that
suppresses speech . . . on the basis of the speech's content and
in advance of its actual expression" -- in other words, a prior
restraint on speech.  United States v. Farooq, 58 F.4th 687, 695
(2d Cir. 2023).  There is a "heavy presumption against the
constitutional validity of any imposition of a prior restraint."
Id. (citation omitted).  Prior restraints constitute "the most

serious and the least tolerable infringement" on our freedoms of speech.  Citizens United v. Schneiderman, 882 F.3d 374, 386 (2d Cir. 2018) (citation omitted).  Nothing in the SAC comes close to meeting the "unequalled power of the presumption against prior restraint."  Id. at 387.

### Conclusion

The January 19, 2024 motions to dismiss are granted.  The SAC is dismissed in its entirety.

Dated:     New York, New York
           April 5, 2024

_____
            DENISE COTE
United States District Judge